De VOE v C A HULL, INC

De VOE v DEPARTMENT OF TRANSPORTATION

Docket Nos. 92564, 92565. Submitted January 6, 1988, at Lansing. Decided March 25, 1988. Leave to appeal denied, 431 Mich —.

Geraldine Fischer De Voe, personal representative of the estate of Bobby Fischer, deceased, brought a wrongful death action in the Saginaw Circuit Court against C. A. Hull, Inc., and the City of Saginaw and an action in the Court of Claims against the Department of Transportation, alleging that defendants' negligence in lighting a bridge construction project was the proximate cause of a boating accident in which the decedent died. The cases were consolidated for trial and Robert S. Gilbert, J., acting as a judge of both courts, entered judgments of no cause of action in favor of all defendants. Plaintiff appeals both judgments, alleging error in the order in which the judge found the facts in the Court of Claims case, in admitting evidence of the boat driver's intoxication, in allowing certain witnesses to testify as experts, in allowing evidence of the boat driver's condition and conduct prior to the accident and in allowing defense counsel's remarks during closing argument to prejudice the case. The Court of Appeals consolidated the appeals.

The Court of Appeals *held:*

1. Findings of fact are sufficient where it is manifest that the factfinder was aware of the factual issue, that he resolved it, and that it would not facilitate appellate review to require further explanation of the path followed by the factfinder in reaching the result. The court's findings were sufficient.

2. The decision to allow evidence to be admitted rests in the sound discretion of the trial court. Evidence of the boat driver's intoxication was relevant to the issue of the proximate cause of

REFERENCES

Am Jur 2d, Appeal and Error §§ 47 *et seq.*

Am Jur 2d, Evidence §§ 251 *et seq.*

Am Jur 2d, Expert and Opinion Evidence §§ 26 *et seq.*

See the Index to Annotations under Appeal and Error; Exclusion and Suppression of evidence; Expert and Opinion Evidence.

the accident. The court did not abuse its discretion in admitting it.

3. The court did not abuse its discretion in qualifying certain witnesses as experts.

4. The most important factor in determining the admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident is the degree of probability that the conduct continued until the accident occurred, as against the objection that the testimony is too remote to be relevant. The court properly allowed evidence of the boat driver's condition and conduct prior to the accident.

5. An appellate court, in reviewing an appeal based on an attorney's improper argument at trial, should first determine whether or not the claimed error was in fact error, and if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial; if the error is so preserved, then there is a right to appellate review, if not, the court must still make one further inquiry: it must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial—if the court cannot say that the result was not affected, then a new trial may be granted. Plaintiff did not object to the argument and the argument did not deprive plaintiff of a fair trial.

Affirmed.

1. APPEAL — FINDINGS OF FACT.

Findings of fact are sufficient where it is manifest that the factfinder was aware of the factual issue, that he resolved it, and that it would not facilitate appellate review to require further explanation of the path followed by the factfinder in reaching the result.

2. EVIDENCE — UNFAIR PREJUDICE — RULES OF EVIDENCE.

The concept of "unfair prejudice" as incorporated in the rule of evidence which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice involves more than that the evidence is "damaging" to a party's case; prejudice arises where there exists a danger that evidence which is minimally damaging when evaluated in a logical manner may be given weight by the jury substantially out of proportion to its logically

damaging effect; unfair prejudice arises where the admission of prejudicial evidence would be inequitable (MRE 403).

3. WITNESSES — EXPERT WITNESSES — RULES OF EVIDENCE — APPEAL.

A witness may be qualified as an expert if he has acquired specialized knowledge through experience, training or education; the question of whether the witness is qualified as an expert is left for the discretion of the trial judge, and his decision is to be interfered with only where an abuse of discretion is demonstrated (MRE 702).

4. EVIDENCE — NEGLIGENCE — PRIOR CONDUCT.

The most important factor in determining the admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident is the degree of probability that the conduct continued until the accident occurred, as against the objection that the testimony is too remote to be relevant.

5. TRIAL — ARGUMENTS OF COUNSEL — APPEAL.

An appellate court, in reviewing an appeal based on an attorney's improper argument at trial, should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless; if the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial; if the error is so preserved, then there is a right to appellate review, if not, the court must still make one further inquiry: it must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial—if the court cannot say that the result was not affected, then a new trial may be granted.

*Rousseau & Rygiel, P.C.* (by *Steven L. Rygiel*), for plaintiff.

*Davidson, Breen & Doud, P.C.* (by *Richard J. Doud*), for defendants.

Before: CYNAR, P.J., and BEASLEY and K. B. GLASER,* JJ.

PER CURIAM. Plaintiff's decedent, Bobby Fischer,

* Circuit judge, sitting on the Court of Appeals by assignment.

was thrown overboard and drowned after the boat he was on struck a bridge that was in the process of being renovated. As a result, the decedent's widow, Geraldine Fischer DeVoe, brought suit against defendants C. A. Hull, Inc., and the City of Saginaw in circuit court. DeVoe also filed suit in the Court of Claims against defendant Michigan Department of Transportation. On August 31, 1983, both cases were consolidated in circuit court and Circuit Judge Robert A. Gilbert was assigned to sit as the Court of Claims judge for all matters involving the Court of Claims action. Using a special verdict, on April 23, 1986, the jury returned a verdict of no cause of action in favor of C. A. Hull and the City of Saginaw. On April 30, 1986, the trial judge made findings of fact and rendered a verdict of no cause of action against defendant MDOT. Plaintiff appeals as of right both verdicts. This Court has consolidated both of plaintiff's appeals.

Prior to the accident, defendant city contracted with the MDOT to dismantle the Johnson Street Bridge and build a new bridge at the same site. The bridge is located on the Saginaw River in Saginaw, Michigan. The MDOT hired C. A. Hull as the general contractor in charge of dismantling the bridge. Before the bridge was taken apart, it had navigational aides on its span, including a green light that indicated a channel for boats to pass through and two red lights that marked the sides of the channel. The day of the accident, June 6, 1981, part of the top section of the bridge had been removed including the green and red lights. In addition, two of the bridge's piers had been taken out and the contractor's barge blocked two-thirds of the channel. On the barge there was a steady red light and a flashing yellow light and

another red light was placed thirty-one feet west of the barge on an icebreaker pier.

On the day in question, at approximately 8:00 A.M., the decedent and his wife met Richard and Sue Wenzel at the marina where the Wenzel's boat was docked. The Fischers and Wenzels had been out on the boat the weekend before and had passed through the bridge construction site. At about 9:00 A.M., the couples left the marina and commenced drinking beer from a keg which Wenzel had on his boat in a tub of ice.

They traveled to a nearby marina where De-Voe's sister kept a boat. They visited for approximately forty-five minutes and proceeded to Wickes Park. Afterwards, they went to Ojibway Island and then to a restaurant and bar called Miller's Landing at about 1:00 or 2:00 P.M. Sometime that morning, the Wenzels' boat passed through the bridge construction site on the way out of Saginaw.

At about 3:00 P.M., the Fischers and Wenzels left the boat at the restaurant and went to a nearby party. Eugene and Dorothy Sturm were also at the party. Mr. Sturm saw Wenzel at the party and noticed that Wenzel was quite intoxicated. Wenzel's speech was slurred and he lacked coordination. Sturm drove decedent and Wenzel to a nearby store so that Wenzel could purchase some parts for his boat. The men then returned to the party for about forty-five minutes.

At approximately 6:30 P.M., the Fischers, the Wenzels and the Sturms returned to Miller's Landing. Sturm helped carry the Wenzels' keg of beer back onto the boat. Apparently, the same keg had been taken to the party by Wenzel. Sturm indicated that there was still a good amount of beer left in the keg. Sturm and decedent worked

on the boat's engine while Wenzel socialized and continued to drink beer.

The entire group went for a boat ride out into Saginaw Bay. Mrs. Sturm testified to being a little frightened during the ride because Wenzel was driving too fast for the condition of the waves and making sharp turns. After the boat ride, the group went back to Miller's Landing and ordered a pitcher of beer. At that time, Mrs. Sturm looked at Wenzel and noticed that his eyes were glazed and he was "very slow."

Around 9:15 P.M., the men had a confrontation with the barmaid at the restaurant and were asked to leave. Everyone returned to the boat and had one more drink before the Sturms left. When the Sturms departed, it was beginning to get dark, but it was a clear night.

The Wenzels and Fischers then travelled to the Sands Bar. It took them approximately one hour to get there and they stayed for about thirty to forty-five minutes. They left the Sands Bar around 11:15 P.M. and proceeded south down the river towards Saginaw and the bridge. Wenzel drove the boat and decedent stayed next to the engine at the rear of the boat. Wenzel and decedent were discussing some mechanical problems with the boat while Wenzel increased and decreased the boat's speed.

While Wenzel and decedent continued discussing the mechanical problems, Wenzel completely turned around and faced decedent. Plaintiff heard Wenzel suddenly exclaim, "Oh my God" and then the boat struck the bridge with a violent impact. The boat had veered right of the lighted channel and struck an unlighted pier of the bridge that was ninety feet west of the right side of the channel.

After the impact, plaintiff called for decedent

but there was no response. Plaintiff then threw the beer barrel and the ice tub out of the boat. Plaintiff noticed that the barrel was not heavy. Decedent's body was later found in the river. The cause of death was drowning.

Deputy Gary Van Riper, a fourteen-year veteran of the Saginaw County Sheriff's Department and a ten-year veteran of the department's marine division, testified that the construction site was not properly lighted at the time of the accident. However, Van Riper stated that the accident occurred on a clear evening and the piers of the bridge were clearly visible.

After conducting an investigation into the accident, Van Riper concluded that the boat was travelling at full plane at the time of the impact. Van Riper estimated that the boat's speed on impact was about seventeen to twenty-five miles per hour. After the accident, the boat's throttle was found in the full forward position.

Deputy Sheriff Jeffrey Richardson opined that the boat was running at full plane at the time of impact. He stated that, although the bridge was poorly lit at the time of the accident, the bridge's pillars were clearly visible even without the lighting.

Plaintiff's expert, Robert V. Ricard, testified that defendants' light configuration and the location of C. A. Hull's barge at the time of the accident were both in violation of federal law.

Diane Johnson, a paramedic, testified that she saw Wenzel's eyes after the accident and they were bloodshot and he had a strong odor of alcohol on his breath. Wenzel slurred his speech, staggered about the boat, was belligerent and only wanted to get off the boat. Johnson heard plaintiff state "he [Wenzel] should never have been driving."

The jury returned a verdict of no cause of action against C. A. Hull and the city. On April 30, 1986, the trial judge rendered a verdict of no cause of action in favor of the MDOT. The instant appeals followed.

First, plaintiff contends that the trial judge erred in first determining the issue of sole proximate cause as to the nonparty driver prior to determining whether the Department of Transportation's negligence was a proximate cause of the accident. Plaintiff argues that the court's opinion should have been written in the same sequential order as SJI2d 15.03 to SJI2d 15.05. We disagree.

Findings of fact are sufficient where it is manifest that the factfinder was aware of the factual issue, that he resolved it, and that it would not facilitate appellate review to require further explanation of the path followed by the factfinder in reaching the result. *Blom v Thermotion Corp,* 139 Mich App 50, 55; 360 NW2d 172 (1984), citing *People v Jackson,* 390 Mich 621, 627, n 3; 212 NW2d 918 (1973). In the Court of Claims case, the trial court correctly decided the factual issue of proximate cause. The sequence in which the trial judge wrote his opinion is not a ground for reversal. The trial judge was aware of the issues in the case and correctly applied the law since it is evident that, although defendants were negligent in lighting the channel and in mooring the barge, the evidence indicated that the accident would not have occurred if Wenzel had maintained a proper lookout of the bridge and carefully driven the boat through the construction area. Thus, we find no merit to plaintiff's first claim of error.

Next, plaintiff complains that the trial judge abused his discretion in admitting evidence of Wenzel's intoxication, since the probative value of

this evidence was substantially outweighed by the unfair prejudice caused to plaintiff.

A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be set aside absent an abuse of discretion. *Guider v Smith,* 157 Mich App 92, 103-104; 403 NW2d 505 (1987). When reviewing a trial court's decision to allow the jury to be presented with certain evidence, this Court will not assess the weight and value of the evidence, but will only determine whether the evidence was of such a nature that it could be properly considered by the jury. *Id.* Evidence is relevant if it has any tendency to make the existence of a fact in issue to the action more or less probable than it would be without the evidence. MRE 401. Relevant evidence may nonetheless be excluded from trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In *Sclafani v Peter S Cusimano, Inc,* 130 Mich App 728, 735-736; 344 NW2d 347 (1983), this Court defined "unfair prejudice":

> "Unfair prejudice" does not mean "damaging." *Bradbury v Ford Motor Co,* 123 Mich App 179, 185; 333 NW2d 214 (1983). Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in

which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted.

We agree with plaintiff's contention that Wenzel's intoxication was not relevant nor probative to whether defendants were negligent. However, Wenzel's intoxication was highly probative of the proximate cause of the boating accident since defendants maintained that the allegedly improper lighting was not a proximate cause of the accident. Instead, the sole proximate cause was Wenzel's, intoxication which prevented him from being attentive and driving the boat through the construction area. We recognize that evidence of Wenzel's intoxication was damaging to plaintiff's case. However, we cannot conclude that plaintiff suffered unfair prejudice since this evidence was not merely marginally probative. On the contrary, it was essential in deciding the proximate cause of the boat accident. Secondly, there was no less prejudicial means for defendants to show that Wenzel's negligence, not theirs, proximately caused the accident, resulting in Fischer's death. Accordingly, we find no error.

Plaintiff also contends that it was error for the trial court to allow into evidence the opinions of the investigating police officers as to speed, direction of travel and manner of travel of the boat

when the officers had not been qualified as experts in those areas.

In determining the admissibility of opinion testimony of a witness, the question of whether the witness is qualified as an expert is left for the discretion of the trial judge, and his decision is to be interfered with only where an abuse of discretion is demonstrated. *Anderson v Lippes,* 18 Mich App 281, 285; 170 NW2d 908 (1969), app dis 383 Mich 765 (1970). A witness may be qualified as an expert if he or she has acquired specialized knowledge through experience, training or education. MRE 702. In this case, it was not error to permit the officers to render opinions based on their investigations of the accident. Both officers had training and experience in examining boating accidents, especially in the area of the Saginaw River. Moreover, their testimony regarding the boat's speed, even if erroneously admitted, was harmless error since Wenzel testified to the speed that he was travelling. See *Anderson, supra,* p 287.

Next, plaintiff alleges that the trial court erred by denying plaintiff's motion in limine to exclude testimony of: (1) Wenzel's intoxication prior to the accident; and (2) Wenzel's driving the boat fast and in a reckless manner. Specifically, plaintiff complains that it was error to allow Mr. Sturm to testify that at 3:00 P.M. that day, Wenzel appeared intoxicated. In addition, plaintiff challenges Mrs. Sturm's testimony regarding the reckless manner that Wenzel was driving as being too remote in space and time to prove that Wenzel was negligently driving the boat shortly prior to the accident. We disagree.

In *Bryant v Brown,* 278 Mich 686, 688; 271 NW 566 (1937), the Court was confronted with the admission of witnesses' estimates of a driver's excessive speed prior to an accident. Testimony

offered by the defendant as to plaintiff's speed at a *remote* point in time was rejected, but witnesses were permitted to state the speed just before plaintiff came to the last curve and rounded it. "The competency of such testimony is not determined by specific distance or time but by causal connection or contact with the accident." *Id.,* p 688. This causal connection rule was subsequently approved in *Humphries v Complete Auto Transit, Inc,* 305 Mich 188, 193; 9 NW2d 55 (1943), and *Crane v Woodbury,* 41 Mich App 11, 17; 199 NW2d 577 (1972). In *Crane,* this Court further elaborated on the *Bryant* test by quoting 46 ALR2d 9, 13, 19:

> "In determining the admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident as against the objection that the testimony is remote, *the most important factor is the degree of probability that the conduct continued until the accident occurred."* (Emphasis added.) [41 Mich App 17.]

In *Woodrow v Johns,* 61 Mich App 255, 265; 232 NW2d 688 (1975), this Court applied the *Crane* test and held that evidence of the defendant's improper speeding before the accident was admissible where the speeding continued until the time of the accident.

In this case, the trial court properly denied plaintiff's motion in limine to exclude evidence of Wenzel's intoxication and fast driving a few hours before the accident since this conduct continued until the accident. Further, this evidence established that this very same conduct was responsible for the accident and demonstrated a pattern of conduct.

Finally, plaintiff argues that defense counsel's remarks in closing argument caused prejudice to the case. We disagree.

In *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982), the Supreme Court described how an appellate court should review an appeal based on an attorney's improper argument:

> [T]he appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.

See also *Heintz v Akbar,* 161 Mich App 533, 537; 411 NW2d 736 (1987).

In this case, there was no objection. Our further inquiry into the matter convinces us that counsel's closing argument did not deprive plaintiff of a fair trial. Defense counsel merely restated the facts as testified to by plaintiff. Defense counsel is permitted to discuss the character of a witness and characterize his testimony. *Firchau v Foster,* 371 Mich 75, 78-79; 123 NW2d 151 (1963). Finally, Officer Van Riper's inadvertent reference to a criminal trial did not deprive plaintiff of a fair trial. The reference did not name who was on trial or what the charges were. Moreover, the trial judge alertly prevented the witness from making any further reference to the criminal trial.

Affirmed.