862 F.2d 316
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin KENDALL, Luann Kendall, Matthew Kendall, and Maren
Kendall by Their Next Friend, Luann Kendall,
Plaintiffs-Appellees,
v.
RAINWATER OIL FIELD EQUIPMENT COMPANY, the successor
corporation of Dickirson- Davis Corporation, a
Nevada corporation. Defendant-Appellant.
 No. 87-2187.
 United States Court of Appeals, Sixth Circuit.
 Nov. 14, 1988.
 
 Before MERRITT, BOYCE F. MARTIN Jr. and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Rainwater Oil Field Equipment Company, the successor corporation of Dickirson-Davis Corporation, a Nevada corporation ("defendant"), appeals the judgment of the district court entered after jury verdict in favor of plaintiffs-appellees Marvin Kendall, Luann Kendall, Matthew Kendall, Marcus Kendall, and Maren Kendall ("plaintiffs") in this diversity products liability action arising under Michigan law. For the reasons that follow, we reverse the judgment of the district court and remand for a new trial.
 
 I.
 
 2
 Plaintiffs commenced the present action on November 1, 1983, by filing a complaint against defendant alleging that Marvin Kendall was severely injured on March 31, 1983, while working on a portable oil well service rig manufactured by defendant. Count I of plaintiffs' complaint alleged that the oil drilling derrick was negligently manufactured by defendant, and Count II alleged that the rig was manufactured in breach of an implied warranty of fitness for a particular purpose. Count III of plaintiffs' complaint alleged loss of consortium on behalf of Luann Kendall as a result of the injury suffered to her husband, Marvin Kendall, and Count IV alleged a cause of action for Matthew, Marcus and Maren Kendall, as the children of plaintiff Marvin Kendall.
 
 
 3
 After several pretrial motions and extensive discovery, the case proceeded to trial on September 9, 1987. On September 30, 1987, the jury reached a verdict in favor of plaintiffs, and the district court entered final judgment on the jury's verdict on October 1, 1987. The judgment was for $1,209,000 damages reduced by five per cent comparative negligence of plaintiff Marvin Kendall ("plaintiff") for a total of $1,148,550. The judgment was apportioned as follows: Marvin Kendall to receive $1,140,000 as damages, Luann Kendall to receive $2,850, and Matthew, Marcus and Maren Kendall to receive $1,900 each as damages.
 
 
 4
 On October 13, 1987, defendant moved for new trial or remittitur of the jury's verdict, but on November 19, 1987, the district court denied defendant's motion. This timely appeal followed.
 
 B.
 
 5
 On March 31, 1983, plaintiff Marvin Kendall and several co-workers were engaged in operating an oil well service rig manufactured by defendant. The workers were using the service rig to "plug back a well," an operation undertaken to improve well production. The service rig, drilling rig number 2, was then owned by plaintiff's employer, Escor, a spin-off from the Michigan Consolidated Gas Company ("MichCon").[1] The rig is a mobile unit placed on the bed of a thirty-nine foot truck and is equipped with a seventy-foot derrick.
 
 
 6
 During the course of operating the rig on the day in question, a bolt holding the pillow block assembly to the rig loosened. The pillow block is used to attach a "spudding beam," an important moving part of the rig, to the frame of the rig. As a loose pillow block can be dangerous, it was necessary to tighten the pillow block bolt before continuing the process. The pillow block bolt is about twelve inches long and one and seven-eighths inches in diameter. To tighten the bolt, one person must hold the bolt nut with a wrench while a second individual turns the bolt head.
 
 
 7
 In order to reach the pillow block nut, plaintiff crawled into the drawworks of the rig. The drawworks is that area where the machinery that operates the rig is located, including three drums of cable as well as the chains and sprockets that power the cables. While plaintiff held the nut with a wrench, a co-worker on top of the rig turned the bolt head.
 
 
 8
 The co-worker, however, lost his footing, slipped from the area where he was standing, and bumped the rig's main air clutch which had been disengaged to tighten the assembly. The sprockets and chains driving the cable drums then began to turn, and the movement of one of the chains caught plaintiff's arm pushing it between a drum band break and the main drum. Plaintiff's arm became lodged in this position, and his right hand was amputated just above the wrist.
 
 
 9
 Plaintiff and his severed hand were immediately extricated from the rig, and plaintiff was taken to a hospital where successful surgery to reattach his hand was performed. Plaintiff, however, suffered a severe loss in grip strength, loss of sensory function, and a severe diminution in the ability to perform fine motor skills with his right hand. Plaintiff also lost all of his right thumb above the first knuckle in the accident.
 
 
 10
 At trial, plaintiffs sought to prove that the service rig as manufactured by defendant was unsafe because part of a guard enclosing the area where plaintiff was injured was not installed when the rig was built, because the main air clutch control valve was dangerously situated, because the pillow block bolt was not attached to the rig frame by means that would not require access to the lower part of the rig assembly in order to tighten the bolt, and because access to the pillow block bolt assembly by some other means was not provided.
 
 
 11
 Defendant, however, countered that the rig had been properly guarded when built, that the control panel as constructed was safe, that the pillow block assembly was attached to the frame by the only feasible means of attachment, and that easy access to the pillow block bolt was provided by the design of the rig. Defendant also sought to prove that the rig was rendered dangerous by modifications made after it was acquired by plaintiff's employer and that the cause of the accident was plaintiff's and his co-worker's failure to abide by adequate safety procedures. As stated, the jury found both defendant and plaintiff negligent, assessing plaintiff's negligence at five per cent.
 
 II.
 A.
 
 12
 Defendant first argues that it is entitled to a new trial because Judge Churchill exhibited bias and hostility towards defendant and interjected himself into the trial in a manner depriving defendant of its right to a fair trial. See In re Murchison, 349 U.S. 133, 136 (1955). Defendant asserts that Judge Churchill several times intervened in the trial thus abdicating his role as a "neutral arbiter." United States v. Tilton, 714 F.2d 642, 644 (6th Cir.1983) (per curiam).
 
 
 13
 For example, during the course of trial defendant attempted to show that the sole proximate cause for plaintiff's accident was the negligence of plaintiff's employer. Specifically, defendant asserted that modifications were performed upon its rig which caused the accident to occur. Plaintiff's expert Robert Hume, however, testified that there had been no negligence on the part of plaintiff's employer. As defendant's counsel began to cross-examine Hume on this opinion, the court, without objection from plaintiff's counsel, chastised defendant's counsel for raising this issue:
 
 
 14
 [by Mr. McCandless, defendant's counsel]
 
 
 15
 Q. Now, in May of 1987 when you gave your deposition, at that time, you rendered a number of opinions with respect to this lawsuit; correct?
 
 
 16
 A. Yes.
 
 
 17
 Q. Do you recall expressing an opinion at that time that the employer, MichCon or Escor, was not at fault?
 
 
 18
 A. Yes, I did.
 
 
 19
 Q. Do you still believe that today, sir?
 
 
 20
 A. I believe so.
 
 
 21
 THE COURT: Just a moment. Do you have any objection to going into fault on the part of the employer?
 
 
 22
 MR. BRUETSCH [plaintiff's counsel]: I'm sorry, your Honor?
 
 
 23
 THE COURT: I thought--
 
 
 24
 MR. BRUETSCH: Your Honor, I was looking for a folder when those pictures were talked about.
 
 
 25
 THE COURT: Would you read the last two questions back, please.
 
 
 26
 (Whereupon a portion of the record was read back by the reporter.)
 
 
 27
 MR. BRUETSCH: I do object, Your Honor. I know what the questions were.
 
 
 28
 I object to any attempt to explore with this expert or any other witness in this case the punitive negligence of a non-party.
 
 
 29
 THE COURT: I agree with you. The fault, if any, of any other party other than the defendant or the plaintiff in this case is totally irrelevant, counsel, and you know it.
 
 
 30
 MR. McCANDLESS: Your Honor, the reason--
 
 
 31
 THE COURT: Fault is totally irrelevant.
 
 
 32
 MR. McCANDLESS: Your Honor, my position is that the sole proximate cause of the accident were the actions of MichCon.
 
 
 33
 THE COURT: Counsel, you didn't ask him about the actions. You asked him about the fault.
 
 
 34
 As an experienced products liability lawyer, you know there's a big difference. The Michigan standard instructions refer to the actions of others.
 
 
 35
 The fault--I'm going to say this right now--the fault, if any, of MichCon is totally irrelevant in this case.
 
 
 36
 MR. McCANDLESS: Your Honor, maybe--I don't mean to be dense. I'm not following the distinction.
 
 
 37
 THE COURT: Well, it's time you do, because the fault, if any, of MichCon is totally irrelevant.
 
 
 38
 MR. McCANDLESS: Your Honor, I--
 
 
 39
 THE COURT: Fault involves breach of a duty. The actions, if any, of MichCon are not irrelevant, but whether or not there was fault involved is totally irrelevant, and it's improper to even suggest otherwise.
 
 
 40
 MR. McCANDLESS: Your Honor, if I am understanding the Court, I can phrase the question so far as the Court pleases with respect to--
 
 
 41
 THE COURT: There is nothing clearer in products liability law than a lawyer has no business trying to introduce fault of another party.
 
 
 42
 MR. McCANDLESS: Your Honor, I'm attempting to question this witness with respect to the actions of MichCon and how they relate to this accident.
 
 
 43
 THE COURT: You can ask him about the actions, but whether MichCon's actions were the fault or not the fault is totally irrelevant, counsel. It's a red herring in this lawsuit and you know it.
 
 
 44
 MR. McCANDLESS: Your Honor, what I--I'm not trying to mislead anyone. But my conception [sic] is that the actions of Michcon may be the sole proximate cause.
 
 
 45
 THE COURT: Counsel, you didn't ask him about the actions of MichCon. You asked him about the fault.
 
 
 46
 MR. McCANDLESS: Then I'll rephrase it.
 
 
 47
 THE COURT: I'm saying whether MichCon's actions, if any, were at fault or negligent or intentional or in any way a violation of any rules is totally irrelevant.
 
 
 48
 MR. McCANDLESS: If I'm understanding the Court, I can inquire into the actions of MichCon?
 
 
 49
 THE COURT: Of course you can. But you know, counsel, I cannot believe any lawyer practicing products liability law doesn't know it's a red herring to try to introduce fault.
 
 
 50
 MR. McCANDLESS: Perhaps my question was poorly phrased.
 
 
 51
 THE COURT: It surely was poorly phrased, and it doesn't belong in this lawsuit or any lawsuit, and you know it.
 
 
 52
 MR. McCANDLESS: Your Honor, what I know is the actions of MichCon is [sic] the subject matter of my questions.
 
 
 53
 THE COURT: You didn't ask him about the actions. You asked him about fault.
 
 
 54
 Fault involves a breach of duty and it goes way beyond action. It involves whether or not their actions were proper or improper, or whether there was a breach of duty. It's an improper question, and it's a red herring in every products liability lawsuit.
 
 
 55
 I so rule, and I sustain the objection.
 
 
 56
 MR. McCANDLESS: All right.
 
 
 57
 THE COURT: I'm not--if you ask it again, I'm going to put it in stronger terms.
 
 
 58
 MR. McCANDLESS: Your Honor, I'm trying to understand the Court. Can I ask about the actions of MichCon?
 
 
 59
 THE COURT: Of course you can ask about the actions of MichCon, but don't you ever in this Court in a products liability case try to bring in actions and fault as the same thing, because fault is irrelevant.
 
 
 60
 And you know the standard instruction under Michigan law on that and the law of this Court.
 
 
 61
 You may ask him about the actions, if any, of MichCon.
 
 
 62
 MR. McCANDLESS: Thank you.
 
 
 63
 THE COURT: Members of the jury, whether MichCon was at fault in this accident is totally irrelevant in this lawsuit.
 
 
 64
 J.A. at 724-79 (emphasis supplied).
 
 
 65
 After this exchange, defendant's counsel proceeded to a different line of questions. Shortly thereafter, however, the court explained the use of the term "red herring":
 
 
 66
 THE COURT: Wait a minute, now. A red herring is frequently something that somebody else introduces into the lawsuit for the purpose of confusion.
 
 
 67
 * * *
 
 
 68
 * * *
 
 
 69
 [A] red herring goes a little bit beyond irrelevancy. It's usually something that smells if dragged across a track.
 
 
 70
 * * *
 
 
 71
 * * *
 
 
 72
 Up here in dog country, you understand what a red herring is. You take a red herring and drag it across the track to mislead a dog. All right.
 
 
 73
 J.A. at 737-38.
 
 
 74
 Defendant maintains that the above comments, and others, served to malign defendant's counsel's competence and credibility before the jury and to prejudice the jury against defendant's position. Defendant asserts that the trial judge assumed the role of advocate and thereby destroyed the atmosphere of impartiality which trial courts are duty bound to maintain. See United States v. Hickman, 592 F.2d 931, 933 (6th Cir.1979) ("[A trial judge] should sedulously avoid all appearances of advocacy....") (quoting Frantz v. United States, 62 F.2d 737, 739 (6th Cir.1933)); United States v. Frazier, 584 F.2d 790, 793 (6th Cir.1978). See also Sit-Set, A.G. v. Universal Jet Exchange, Inc., 747 F.2d 921, 925 (4th Cir.1984).
 
 
 75
 After a careful review of the record, we conclude that the judge's conduct in the present case has not "so clearly crossed the line to reach that area of impermissible and prejudicial behavior which would warrant reversal...." Tilton, 714 F.2d at 644. We do not, however, mean by this conclusion to condone the court's comments in this case, conduct which we believe does not serve the "neutrality requirement['s] [goal of] preserv[ing] both the appearance and reality of fairness, [and] 'generating the feeling, so important to a popular government, that justice has been done....' " Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980) (quoting Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 172 (1951) (Frankfurter, J., concurring)).
 
 B.
 
 76
 Defendant also argues that the district court erred in concluding that evidence of plaintiff's employer's fault is inadmissible as irrelevant under Michigan law.[2] As quoted above, the district court directly and vociferously instructed the jury and counsel that evidence of plaintiff's employer's fault was not to be introduced by counsel or considered by the jury. We agree that the district court erred in excluding this evidence. Moreover, the district court committed reversible error during the cross-examination of plaintiff's expert in instructing the jury "[m]embers of the jury, whether MichCon was at fault in this accident is totally irrelevant in this lawsuit."
 
 
 77
 Under Michigan law, proof that a nonparty's conduct was the sole proximate cause for an accident is relevant and may relieve the defendant of any liability for plaintiff's harm. See DeVoe v. C.A. Hull, Inc., --- Mich.App. ----, 426 N.W.2d 709, 713 (1988). A defendant, however, "cannot escape liability for its negligent conduct merely because the negligence of others may also have contributed to the harm caused." Brisboy v. Fibreboard Corp., 429 Mich. 540, 547, 418 N.W.2d 650, 653 (1988); Kirby v. Larson, 400 Mich. 585, ----, 256 N.W.2d 400, 410-11 (1977).
 
 
 78
 The Michigan law on this point is accurately reflected in the general charge given by the district court at the end of the trial in the present case:
 
 
 79
 If you find that the conduct of the defendant was negligent, and that such negligence was a proximate cause of the occurrence, it is not a defense that the conduct of the plaintiff's employer, who is not a party to this suit, may also have been a cause of the occurrence.
 
 
 80
 However, if you decide that the conduct of the plaintiff's employer was the only proximate cause of the occurrence, then your verdict should be for the defendant.
 
 
 81
 J.A. at 2345-46.
 
 
 82
 Thus, in Michigan, "[i]t is entirely proper for a defendant in a negligence case to present evidence and argue that liability for an accident lies elsewhere, even on a nonparty." Mitchell v. Steward Oldford & Sons, Inc., 163 Mich.App. 622, ----, 415 N.W.2d 224, 227 (1987). Although the district court in the present case recognized that defendant could present evidence as to plaintiff's employer's conduct, its conclusion that defendant is precluded under Michigan law from attempting to show such conduct is negligent or that the employer was at fault finds no support in the Michigan case law. Indeed, a defendant in Michigan may present evidence both that a nonparty's conduct was negligent and that the negligent conduct was the sole proximate cause for an accident.[3] Two Court of Appeals of Michigan cases illustrate this principle.
 
 
 83
 In Love v. Brumley, 30 Mich.App. 61, 186 N.W.2d 19 (1971), the Court of Appeals of Michigan reviewed "a personal-injury construction-site negligence action by the employee of a general contractor against a subcontractor." Id. at ----, 186 N.W.2d at 20. In Love, the defendant subcontractor introduced evidence that the plaintiff's employer, the general contractor, was at fault in the accident. The plaintiff maintained that the defendant should have been precluded from asserting that plaintiff's employer's negligence caused the accident but the court of appeals rejected this argument:
 
 
 84
 Plaintiffs ... argued that it was error to permit evidence that plaintiff['s] employer, a non-assessable party, was guilty of negligence. Reason and logic dictate that a defendant should not be precluded from placing the liability for an accident elsewhere.... It was proper for the trial court to admit such evidence.
 
 
 85
 Id.
 
 
 86
 In Esparza v. Horn Machinery Co., 160 Mich.App. 630, 408 N.W.2d 404, lv. denied, 428 Mich. 917 (1987), plaintiff was injured while operating a mechanical power press at work. Plaintiff brought an action against the seller of the press, alleging negligence and breach of implied warranty. At trial, defendant asserted that its machine was safe and non-negligently designed and constructed. Defendant further argued that plaintiff's accident was the result of negligence on the part of plaintiff's employer, not a party to the accident.
 
 
 87
 The defendant requested and received an instruction to the jury to the effect that the jury could consider whether plaintiff's employer was negligent and whether such negligence was the proximate cause of plaintiff's injury. On appeal plaintiff argued that this instruction was erroneous as defendant should have been prevented from arguing or presenting evidence regarding plaintiff's employer's negligence. The court of appeals, however, found the jury had been correctly instructed:
 
 
 88
 It is perfectly proper for a defendant in a negligence case to present evidence and argue that liability for an accident lies elsewhere.... Plaintiffs conceded the employer's negligence and that it was a proximate cause. It was not unfair for defendant to seek to blame someone else for the accident when plaintiff sued defendant.
 
 
 89
 Id. at ----, 408 N.W.2d at 408.
 
 
 90
 The court in Esparza thus recognized that defendant could attempt to escape liability by showing plaintiff's employer's negligence was the sole proximate cause of the accident. The fact that plaintiff's employer was not a party to the action was irrelevant in the court's opinion: "The unavailability of plaintiff's employer as a party, however, should not preclude evidence or arguments on the employer's negligence as an intervening cause, for example." Id. (emphasis supplied).
 
 
 91
 Plaintiff argues that even if the district court erred in precluding defendant from eliciting evidence regarding plaintiff's employer's negligence and in erroneously instructing the jury during the trial, any error in this regard was remedied by the court's later, accurate general charge to the jury. Given, however, the forcefulness and specificity with which the jury was instructed, during the plaintiff's proof, to disregard evidence of MichCon's fault as "totally irrelevant" and as having "no business" in the action, we do not believe that the court's subsequent correct instruction in the general charge could have a curative effect on this error. In our view, the court's comments created the indelible impression that the jury should not consider MichCon's fault.
 
 III.
 
 92
 Accordingly, for the foregoing reasons, the judgment of the district court is REVERSED, and this matter is REMANDED for a new trial.[4]
 
 
 
 [1]
 The parties used "Escor" and "MichCon" interchangeably during the trial in referring to plaintiff's employer
 
 
 [2]
 Presumably, the court's ruling in this regard was based on Fed.R.Evid. 402, which provides that "[e]vidence which is not relevant is not admissible." Evidence is relevant where it has "any tendency to make the existence of any fact that is of consequence ... more or less probable...." Fed.R.Evid. 401. Whether or not a fact is "of consequence" depends on the substantive law applicable. "In a diversity case, this means that the federal court will have to look to applicable state law because of the Erie [R.R. v. Tompkins, 304 U.S. 64 (1938) ] rule." 1 J. Weinstein & M. Berger, Weinstein's Evidence para. 401 (1988)
 
 
 [3]
 Although the negligence of a nonparty is an ultimate issue to be decided by the jury, an expert's testimony is not objectionable merely because it reaches this issue. See Mich.R.Evid. 704; Ruddock v. Lodise, 413 Mich. 499, ----, 320 N.W.2d 663, 665 (1982) (per curiam); Thon v. Saginaw Paint Mfg. Co., --- Mich.App. ----, 327 N.W.2d 551, 554 (1982)
 
 
 [4]
 Having determined that a new trial is warranted, it is not necessary for us to address the other issues raised in this appeal