*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NADAGEKI CHIVIS, Minor, by Next Friend,
EDNA SHRINER,

UNPUBLISHED
August 26, 2021

Plaintiff-Appellant,

v

No. 351519
Cass Circuit Court
LC No. 18-000344-NI

CASS COUNTY PUBLIC TRANSIT and LINETTA
SMITH,

Defendants-Appellees.

Before: RONAYNE KRAUSE, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Plaintiff, Nadageki Chivis, appeals by right from the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7). Plaintiff does not challenge the grant of summary disposition in favor of defendant Linetta Smith personally. Plaintiff only challenges the grant of summary disposition in favor of defendant Cass County Public Transit (CCPT). We reverse and remand.

## I. BACKGROUND

This matter arises out of a motor vehicle accident in which Plaintiff, who was then 12 years old, was struck and injured by a bus operated by CCPT and driven by Smith. Plaintiff was walking home from Dowagiac Middle School with his friends SB, RP, NS, and some other children when plaintiff attempted to, or was about to, cross Riverside Drive, in Dowagiac, Michigan, so that he could get to his family's residence. Smith was driving CCPT's "Dial-A-Ride" bus and had recently picked up Malyssa Tiffin, as well as Tiffin's child, from downtown Dowagiac, Michigan, and was driving them to Vineyard Place Apartments on Riverside Drive. Smith drove on Riverside Drive at least a few times every day because it was one of the routes to both the apartment complexes and the junior high school, and she knew that groups of children along the road liked to horseplay, so she would always "coast" or go slow down Riverside Drive. Riverside Drive is a two-lane road with a posted speed limit of 25 miles an hour.

According to Tiffin, she felt that Smith was driving recklessly, because the bus did not have seat belts and she found herself sliding around. However, she clarified that although she believed Smith was taking turns too aggressively, she did not believe Smith had ever exceeded the speed limit or strayed out of her driving lane. She believed Smith was driving faster than 15 miles an hour on Riverside Drive. SB opined that the bus was traveling at least 35 miles an hour, apparently because the bus was driving faster than other traffic on the road at the time. Records from the emergency room estimated that the bus had been traveling "about 35 mph," but that was apparently only what had been reported to medical staff. Annay Razo-Castillo, who was driving in the opposite direction and saw the impact, estimated that she and the bus were both traveling at about 20 to 25 miles an hour. According to the bus's GPS logs, which were included in an incident report prepared by Transportation Management, Inc., the bus briefly traveled at 40 miles an hour on Hill Street, which also has a 25 mile an hour posted speed limit, but the logs only showed entries of 6 and 15 miles an hour on Riverside Drive. Tiffin stated that if the GPS logs showed Smith was only driving at 15 miles an hour, she must have been mistaken. Tiffin also emphasized that she did not feel Smith was driving recklessly while on Riverside Drive, and she admitted that she generally felt uncomfortable on public busses.

Smith testified that when she reached Riverside Drive she saw plaintiff on the side of the road but then all of a sudden she somehow struck him with the bus. Smith did not know how plaintiff was in the position to be struck by the bus, and she did not see him go into the street. Tiffin did not observe the actual impact. SB testified that plaintiff was "probably like three steps in the road" when he was struck by the bus, but that he had taken his eyes off plaintiff "for a second" after plaintiff started walking into the road. Nevertheless, he saw "a little bit" of the impact, and he was positive that the impact occurred in the road. Razo-Castillo testified that she saw plaintiff walk directly out into the bus, where he was struck on the side of the bus "like after the door, after the first wheel" rather than being directly in front of the bus. Razo-Castillo believed that plaintiff was still in the grassy area and not in the road when the impact occurred, but she admitted that she had already passed the bus and only heard the impact, she did not see the impact. She nevertheless opined that the bus had not left its lane. RP testified that he observed plaintiff "just like run across like try to run across the road and the bus like smacked him." RP opined that the bus was going straight in its lane, and plaintiff was definitely in the road when he was struck. Another student, JL, testified that he saw plaintiff run out into the road and back twice before the impact; he did not directly observe the impact itself, and he was unsure whether plaintiff was still in the road when he was struck. JL believed, due to damage he saw to the bus's mirror, that plaintiff had been struck by the mirror. A body-camera video recording was taken by one of the responding police officers, in which, despite the extremely poor-quality audio, Smith might be heard saying something to the effect of plaintiff having stuck the bus's mirror "first." JL believed that the bus was driving straight and could not have avoided plaintiff.

Accident reconstructionist Deputy Robert Outlaw opined that the impact occurred in the road, but he declined to offer any opinion of fault. Accident reconstructionist Larry Petersen opined that plaintiff struck part of the main body of the bus in addition to the mirror, and that the impact occurred in the roadway. Petersen observed that the GPS data for the bus was reported in 30-second intervals rather than continuously, so it did not report how fast Smith was driving at the moment of impact. Based on his own calculations, he concluded that the bus was traveling at a minimum of 10 miles an hour, but he was confident it was traveling slower than 25 miles an hour. Accident reconstructionist Sergeant James Campbell opined that there were two possibilities:

either plaintiff was in the road when he was struck, or the bus was so far over to the edge of the lane and plaintiff was so close to the edge of the road that plaintiff was struck with the bus's mirror. However, Campbell pointed out that "there is no physical evidence to put him in the road or in the grass."

Plaintiff's injuries included a traumatic brain injury, bilateral fractures of his ribs, a traumatic subdural hematoma, a fracture to his left clavicle, blunt chest trauma, and blunt abdominal trauma. After the collision, plaintiff was unconscious, spent considerable time in the hospital, and did not remember anything about the day when he was struck by the bus.

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10), alleging that each of them were entitled to governmental immunity pursuant to the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*., and that the motor-vehicle exception, MCL 691.1405, did not apply to CCPT. The trial court granted defendants' motion for summary disposition because it determined that plaintiff was in the road when he was struck by the bus and Smith had not operated the bus negligently. This appeal followed. As noted, plaintiff does not appeal the trial court's grant of summary disposition in favor of Smith individually.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of summary disposition." *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "Similarly, the applicability of governmental immunity is a question of law that this Court reviews de novo." *Wood v City of Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018) (quotation marks and citation omitted). Additionally, "[t]his Court reviews de novo the proper interpretation and application of statutes and court rules." *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110.

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (footnote citations omitted).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

This Court reviews the record in the same manner as the trial court, "consider[ing] affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Like the trial court's inquiry, when an

appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994). In deciding a motion for summary disposition, the courts may not make factual findings or weigh the credibility of the evidence. *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998).

Defendants assert that plaintiff argues for the first time on appeal that Smith could be found to have operated the bus negligently even if plaintiff was struck while in the road. In response to defendants' motion for summary disposition, plaintiff argued that the facts showed plaintiff to have been struck while on the grassy area off the road. The only argument plaintiff presented supposing plaintiff had been in the road was that the bus would have been partially off the road at the time. Any argument by plaintiff that he was in the road at the time of the impact is not preserved for appeal. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). However, strictly speaking, it is defendants who primarily argue that plaintiff was in the road at the time of the collision, so whether plaintiff preserved that argument is effectively irrelevant. This Court may, and frequently will, disregard strict adherence to issue preservation requirements where "consideration is necessary for a proper determination of the case." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Importantly, plaintiff did present extensive additional arguments in support of the proposition that Smith was operating the bus negligently independent of where the impact occurred. For example, evidence that Smith was driving above the posted speed limit, that Smith was driving too fast for conditions or driving erratically, and that Smith failed to keep a proper lookout for children who were known to cross the street in the vicinity. Issues are not considered unpreserved merely because parties make a more extensive or sophisticated argument on appeal. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). We do not accept defendants' contention that plaintiff's appellate argument is wholly novel or relies entirely on legal theories not raised in the trial court, and we exercise our discretion to afford this matter a complete review.

III. ANALYSIS

Plaintiff argues that the trial court erred by granting CCPT summary disposition because there existed genuine issues of material fact regarding whether Smith was operating the bus with reasonable care and caution at the time of the collision.

Under the GTLA, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function," unless an exception otherwise precludes this immunity. MCL 691.1407(1). Neither plaintiff nor defendants dispute that CCPT is a governmental agency, nor do they dispute that Smith was engaged in a governmental function at the time of the collision with plaintiff. However, MCL 691.1405 provides a motor-vehicle exception to the grant of governmental immunity, stating that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]" Therefore, the question before this Court is whether Smith was negligent in her operation of the bus.

"To establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to establish that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached

that duty, (3) the defendant's breach was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *Latham by Perry v Nat'l Car Rental Sys, Inc*, 239 Mich App 330, 340; 608 NW2d 66 (quotation marks and citation omitted). "In the absence of statutory requirements, it is the motorist's duty in the use and operation of his automobile to exercise ordinary and reasonable care and caution, that is, that degree of care and caution which an ordinarily careful and prudent person would exercise under the same or similar conditions." *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). However, a driver is not required to "guard against every conceivable result, to take extravagant precautions, to exercise undue care" and is "entitled to assume that others using the highway in question would under the circumstances at the time use reasonable care themselves and take proper steps to avoid the risk of injury." *Hale v Cooper*, 271 Mich 348, 354; 261 NW 54 (1935). Additionally, this Court has held that a driver is not "bound to anticipate that a minor will come loping into his lane of traffic when he is unaware of the child's presence." *Gamet v Jenks*, 38 Mich App 719, 724-725; 197 NW2d 160 (1972). The fact that an accident occurred does not, by itself, give rise to a presumption of negligence. *Edgerton v Lynch*, 255 Mich 456, 460; 238 NW 322 (1931). Nevertheless, a driver's actual knowledge of the presence of children will impose a heightened duty of vigilance. *Id.*

MCL 500.3135(2)(b) states that noneconomic damages resulting from the use of a motor vehicle "must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault."

> The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury questions unless all reasonable minds could not differ or because of some ascertainable public policy consideration. In addition, proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence. It is for the jury to determine whether a violation of a statute was a proximate cause of the accident. [*Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991).]

"Having discovered the oncoming vehicle, it is the pedestrian's duty to keep watch of its progress and to exercise reasonable care and caution to avoid being struck by it." *Heger v Meissner*, 340 Mich 586, 589; 66 NW2d 220 (1954) (quotation marks and citation omitted). Additionally, MCL 257.655 requires pedestrians to "not walk upon the main traveled portion of the highway" where sidewalks are provided.

We agree with the trial court that the impact occurred in the roadway. Insofar as we can determine, all of the evidence to the contrary comes in the form of speculation from witnesses who did not actually see the impact. There is also no evidence that we can find suggesting that Smith was driving in any manner other than a straight line within her lane of travel. However, that does not conclusively establish that Smith was not driving negligently.

The evidence is inconsistent regarding how fast Smith was driving. Furthermore, Smith was aware of plaintiff and his friends at the side of the road, and it was allegedly known generally that students tended to cross the road in that area. Numerous witnesses opined that Smith could

not have avoided the accident. Campbell opined that if the impact had occurred in the road, Smith would have been unable to stop or react in time. Nevertheless, SB opined that there were no cars in the other lane until after the accident, so Smith could have hit her brakes or swerved into the lane of opposing traffic. SB also opined that Smith was substantially exceeding the speed limit. Consequently, there is a conflict in the evidence, and depending on the jury's resolution of that conflict, it could permissibly find that Smith was driving negligently at the time of the impact.[1]

We recognize that SB would have been twelve years old at the time, and his high estimation of the bus's speed was seemingly based only on a comparison to other traffic. His view of the lack of oncoming traffic would seem contradicted by Razo-Castillo's testimony that she drove past the impact in the opposite direction. Nevertheless, in deciding a summary disposition motion, we may only set aside a conflict in the evidence where an outlier's testimony is physically or effectively impossible, see *People v Lemmon*, 456 Mich 625, 643-646; 576 NW2d 129 (1998), or is irreconcilably disproved by unquestionable and unambiguous objective evidence, see *Scott v Harris*, 550 US 372, 378-381; 127 S Ct 1769; 167 L Ed 2d 686 (2007). SB's age and vantage point might suggest his opinion might be entitled to little weight, but his testimony was not impossible. The weight to be given to his testimony, if any, would therefore be a matter of credibility for the jury, not grounds to disregard it when deciding a motion for summary disposition. See *Jenks v Ingham Co*, 288 Mich 600, 607-608; 286 NW2d 93 (1939); *People v Fedderson*, 327 Mich 213, 219-220; 41 NW2d 527 (1950).

There was evidence in the record that Smith was aware of plaintiff and his friends at the side of the road, Smith at least should have been aware that children not-uncommonly crossed the road in that general area, and that Smith was exceeding the posted speed limit at the time of impact and had available ways to avoid the accident. At this procedural stage of the proceedings, we may not determine the credibility or weight to be given any particular evidence. The jury could choose to believe a constellation of evidence from which it could be reasonably inferred that Smith was driving negligently at the time of the accident. Therefore, CCPT was not definitively entitled to governmental immunity because there is a genuine issue of material fact regarding whether the motor-vehicle exception, MCL 691.1405, was applicable. Furthermore, summary disposition for CCPT pursuant to MCR 2.116(C)(7) was improper.

Reversed and remanded. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Jane M. Beckering

---

[1] Plaintiff emphasizes that Smith had allegedly been speeding while she was driving on a different road before turning onto Riverside Drive. The relevance of prior speeding depends to a great extent on whether that speeding continued until the time of the accident. See *DeVoe v C.A. Hull, Inc*, 169 Mich App 569, 579-580; 426 NW2d 709 (1988). On this record and on the basis of the arguments presented to us at this time, we are unpersuaded that Smith's alleged prior speeding is relevant to the disposition of this appeal, so we express no further opinion regarding that allegation.