CALLESEN v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 92841. Submitted October 4, 1988, at Detroit. Decided
February 23, 1989. Leave to appeal applied for.

Russell Callesen sustained serious injuries when an automobile
he was driving struck a freight train of the Grand Trunk
Western Railroad Company at a railroad crossing equipped
with a warning light signal manufactured by Western-Cullen-
Hayes, Inc. Callesen and his parents, Richard and Sandra
Callesen, brought a negligence action in Wayne Circuit Court
against Grand Trunk, Western-Cullen-Hayes and the Associa-
tion of American Railroads, which had conducted tests on
various lenses on warning lights used by its member railroads.
Following trial, the jury found the railroad and the association
were negligent, but that fifty-five percent of the negligence was
attributable to plaintiff Russell Callesen. The jury also found
that the railroad breached an implied warranty relating to the
fitness of the lens on the warning light involved in the accident.
The jury apportioned fault between the defendants, attributing
ninety-nine percent to the railroad and one percent to the
association. The trial court, John H. Gillis, Jr., J., entered a
judgment consistent with the verdict against the railroad, but
entered a judgment, notwithstanding the verdict, in favor of
the association. The railroad appealed, claiming that the trial
court erred in instructing the jury on the doctrine of last clear
chance and on implied warranty of fitness of the disputed
warning light lens. Plaintiffs cross-appealed, claiming that the
trial court erred in granting a favorable judgment to the
association.

The Court of Appeals *held:*

1. The purpose of the last clear chance doctrine is to mitigate
the harshness of contributory negligence by allowing a plaintiff
who has been contributorily negligent to recover where the
defendant had the last opportunity to avoid the accident giving
rise to the action. With the adoption of pure comparative

REFERENCES

Am Jur 2d, Negligence §§ 20 *et seq.*, 1009 *et seq.*; Products Liability
§§ 324 *et seq.*, 470 *et seq.*

Modern development of comparative negligence doctrine having
applicability to negligence actions generally. 78 ALR3d 339.

negligence in Michigan, the last clear chance doctrine has been abolished and is now subsumed under the general process of assessing liability in proportion to negligence. Thus, the trial court erred in instructing the jury on the last clear chance doctrine. However, the error does not require reversal since it did not result in a jury verdict inconsistent with substantial justice.

2. Plaintiffs' implied warranty theory of liability was predicated on the railroad's alleged selection and installation of an inferior lens on the warning light. However, use of the wrong product to give a warning by one owing a duty to warn does not constitute a breach of any implied warranty of the product used, but may constitute negligence for a breach of the duty to warn. The trial court therefore erred in instructing the jury on implied warranty. The error, however, does not require reversal since it did not result in a jury verdict inconsistent with substantial justice because the jury also found the railroad liable for negligence.

3. The trial court did not err in vacating the verdict against the association and in entering a judgment in favor of the association. The trial court correctly determined that, contrary to plaintiffs' claim, the association, in testing various warning lights and their lenses, had no duty to specifically recommend to its members the use of a particular lens that the plaintiffs claimed is superior to that which was used in the light involved in this case.

Affirmed.

1. NEGLIGENCE — LAST CLEAR CHANCE — COMPARATIVE NEGLIGENCE.

The purpose of the last clear chance doctrine is to mitigate the harshness of contributory negligence by allowing a plaintiff who has been contributorily negligent to recover where the defendant had the last opportunity to avoid the accident giving rise to the action; with the adoption of pure comparative negligence in Michigan, the last clear chance doctrine has been abolished and is now subsumed under the general process of assessing liability in proportion to negligence.

2. PRODUCTS LIABILITY — IMPLIED WARRANTIES.

Use of a wrong product to give a warning by one owing a duty to warn does not constitute a breach of any implied warranty of the product used, but may constitute negligence for a breach of the duty to warn.

3. NEGLIGENCE — DUTY — QUESTION OF LAW — QUESTION OF FACT.

In an action for negligence, it is for the court to determine, as a

matter of law, what characteristics must be present for a relationship to give rise to a duty the breach of which may result in tort liability, and it is for the jury to determine whether the facts in evidence establish such characteristics in the parties' relationship.

*Goodman, Eden, Millender & Bedrosian* (by *Joan Lovell* and *James Tuck*), for plaintiffs.

*Patterson & Patterson, Whitfield, Manikoff, Ternan & White, P.C.* (by *Robert G. Waddell*), for Grand Trunk Western Railroad Company.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *Richard J. Tonkin*), for Western-Cullen-Hayes, Inc.

*Bodman, Longley & Dahling* (by *Carson C. Grunewald* and *David K. McLeod*), and *Foster, Meadows & Ballard* (by *Richard A. Dietz*), for Association of American Railroads.

Before: DOCTOROFF, P.J., and SHEPHERD and R. R. LAMB,* JJ.

SHEPHERD, J. This case involves a collision between an automobile and a freight train at a railroad crossing protected by a flashing light signal. The automobile was driven by plaintiff Russell Callesen, who sustained serious injuries. Russell Callesen and his parents sued the railroad, Grand Trunk Western Railroad Company, and the manufacturer of the flashing light, Western-Cullen-Hayes, Inc., as well as the Association of American Railroads, which publishes information for its member railroads concerning crossing protections. The defendant railroad appeals as of right from a substantial jury verdict in favor of plaintiffs on

* Circuit judge, sitting on the Court of Appeals by assignment.

negligence and implied warranty theories of liability, claiming instructional error and seeking an abolishment of the last clear chance doctrine in negligence actions. The plaintiffs cross-appeal from a judgment, notwithstanding the verdict, of no cause of action in favor of the defendant association. The jury's verdict of no cause of action in favor of the manufacturer has not been challenged.

We hold that the last clear chance doctrine has been abolished as a result of the adoption in Michigan of pure comparative negligence, but find that the use of the instruction premised on this doctrine was harmless. Both the jury verdict against the defendant railroad and the judgment notwithstanding the verdict in favor of the association are affirmed.

Trial evidence established that the collision occurred on December 12, 1978. Although Russell Callesen's injuries caused a loss of memory regarding the circumstances of the collision, there was evidence that his automobile was skidding as it approached the railroad crossing. The automobile struck the left side of the locomotive as the locomotive entered the crossing at thirty-five to forty miles per hour. One of plaintiffs' theories at trial was that the collision could have been avoided if the train's brakes were applied earlier inasmuch as the automobile allegedly would have cleared the tracks before the locomotive reached the crossing.

At the time of the collision, the locomotive was occupied by the engineer, brakeman and fireman. The engineer had responsibility for keeping a lookout on the right side of the train and, hence, did not see the collision. He recalled that it seemed like the locomotive hit a broken rail as it entered the crossing, and asked the brakeman and fireman if they had hit a broken rail. They told

him that a car hit the train and to apply emergency braking. About seventeen to eighteen box cars went past the crossing before the emergency braking stopped the train.

The brakeman and fireman were the individuals responsible for keeping a lookout on the left side of the train where the collision occurred. Although they both saw the collision, they gave different accounts of the incident. The fireman saw the automobile about three seconds before the collision as it was skidding towards the crossing. He did not, however, recall telling the engineer to stop the train until the moment of impact. By contrast, the brakeman, who recalled the car skidding at a high rate of speed, testified that both he and the fireman told the engineer to stop the train before the collision and that he could feel the train slowing down before the actual impact.

Other trial evidence concerned the adequacy of the flashing light as a warning signal for motorists. Plaintiffs' theory relating to this evidence was that the flashing light signal was not aligned and maintained properly and that the roundel installed inside the unit was inadequate. A roundel is a lens positioned inside the flashing light unit; the lens bends the light to direct it down the road. There was testimony concerning a "hot spot" roundel that concentrates light into a small area and shoots it down the road to alert motorists in time to stop safely and that the hot spot roundel was superior to the roundel used by the defendant railroad. The railroad's liability was predicated on its selection and installation of the less superior roundel while the association's liability was predicated on its alleged failure to adequately disseminate the results of its research on various roundels to member railroads.

The jury found that the railroad and the associa-

tion were negligent, but that fifty-five percent of the negligence was attributable to plaintiff Russell Callesen. The jury also found that the railroad breached an implied warranty relating to the fitness of the roundel for the crossing. The jury thereafter apportioned the fault between the defendants, attributing ninety-nine percent to the railroad and one percent to the association. The trial court vacated the jury verdict against the association and entered a judgment of no cause of action in its favor.

With regard to plaintiffs' negligence claim, the defendant railroad claims that the trial court erred by instructing the jury on the last clear chance doctrine. The railroad asserts that the doctrine was inapplicable to the facts of this case and, further, asks that we abolish the doctrine in view of the adoption of comparative negligence in Michigan.

We begin our analysis by considering whether the evidence warranted giving the instruction since it would not otherwise be necessary to consider whether the doctrine of last clear chance should be abolished. *Zyskowski v Habelmann,* 150 Mich App 230; 388 NW2d 315 (1986), remanded for reconsideration on other grounds 429 Mich 873 (1987). The instruction given was based on SJI2d 14.01, and it is not disputed that the instruction comported with the requirements for the last clear chance doctrine set forth in *Zeni v Anderson,* 397 Mich 117, 152-153; 243 NW2d 270 (1976). Specifically, the court instructed:

> Even if you decide the Plaintiff negligently subjected himself to the risk of hrm [sic] from the Defendants' negigence [sic], the Plaintiff may still recover for harm caused by the Defendants' negligence, if immediately preceding the harm, the

Plaintiff was unable to avoid it by exercise of reasonable diligence and care and the Defendat [sic] was negligent in failing to use, with reasonable care, his existing opportunity to avoide [sic] the Plaintiff's harm when he knew of the Plaintiff's situation and realized or had reason to realize the peril involved in it or could have discovered the situation if he had exercised the diligence which was then his duty to the Plaintiff to exercise.

Even if you decide the Plaintiff, by the exercise of reasonable diligence could have discovered the danger created by the Defendants' negligence in time to avoid harm to him, the Plaintiff can still recover if, A, the Defendant knew of the Plaintiff's situation, B, the Defendant realized that the Plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm and C, the Defendant was negligent after that in failing to use with reasonable care, his existing opportunity to avoid the harm.

It is up to you to decide whether the Plaintiff negligently subjected himself to the risk of harm from the Defendants' negligence but was unable to avoid it by exercise of reasonable diligence and care or whether the Plaintiff could have discovered the danger created by the Defendants' negligence in time to avoid the harm, but failed to do so because of inattentiveness.

Once you have decided which category the Plaintiff fits, if he fits in either one, you sould [sic] then consider whether the other conditions of liability are met . . . .

The defendant railroad argues that there is no evidence from which the jury could conclude that it had an existing opportunity to avoid the harm after discovering plaintiff's peril. See *Wilson v Chesapeake & O R Co,* 118 Mich App 123, 132-133; 324 NW2d 552 (1982), lv den 417 Mich 1044 (1983). We disagree. If the brakeman's testimony that the engineer was informed of the approaching automo-

bile prior to impact is believed and the engineer's testimony that he did not apply the brakes until after impact is believed, then reasonable jurors could find that the brakes could have been applied before impact. Given the fact that the impact occurred at the front of the locomotive, there is also a factual question as to whether the train could have slowed enough for plaintiff to safely cross the track before its arrival. Hence, the evidence was sufficient to support the instruction.

We next address whether the trial court should have refused to give the standard jury instruction on the last clear chance doctrine in view of the adoption of comparative negligence in Michigan. Although the use of the standard jury instructions is encouraged, the trial court has a duty to determine if the instruction is applicable in the context of the case at hand and whether the instruction accurately states the applicable law. MCR 2.516(D)(2); *Johnson v Corbet,* 423 Mich 304, 326-327; 377 NW2d 713 (1985).

The *Zeni* formulation of the last clear chance doctrine preceded our Supreme Court's adoption of a pure comparative negligence system in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). The purpose of the doctrine was to mitigate the harshness of a contributory negligence system that had barred a plaintiff who was contributorily negligent from recovering damages by allowing the plaintiff to recover if it could be shown that the defendant had the last clear chance to avoid the accident. *Zeni, supra,* 156-157.

What the role of the last clear chance doctrine ought to be under the pure comparative negligence system adopted in *Placek* has not yet been resolved in Michigan, although the Court in *Wilson, supra,* 129-130, did hold in dictum that the doctrine has a place as a form of jury instruction if

factually supported. See 417 Mich 1044, wherein our Supreme Court denied leave to appeal while stating that it "is not intimating approval of the dictum of the Court of Appeals concerning the continuing viability of the last clear chance doctrine after the advent of comparative fault."

There is some authority for the retention of the last clear chance doctrine as a form of instruction in states adopting a comparative negligence system. The rationale for this view is that the components of the doctrine remain as proper factors for the jury to consider in apportioning fault. *Macon v Seaward Construction Co, Inc,* 555 F2d 1, 2 (CA 1, 1977) (applying New Hampshire comparative negligence law). Some states adopting modified forms of comparative negligence systems, i.e., where a plaintiff is completely barred from a recovery when the plaintiff's negligence equals or exceeds that of others, have recognized the continued viability of the last clear chance doctrine. See for example *Bradley v Appalachian Power Co,* 163 W Va 332; 256 SE2d 879 (1979). Other states adopting a pure comparative negligence system, as in Michigan, have expressly, and sometimes summarily, abolished the doctrine as no longer being needed. See for example *Hoffman v Jones,* 280 So2d 431, 438; 78 ALR3d 321 (Fla, 1973); *Li v Yellow Cab Co of California,* 13 Cal 3d 804, 824-825; 119 Cal Rptr 858; 532 P2d 1226, 1240-1241; 78 ALR3d 393 (1975); *Kaatz v State,* 540 P2d 1037, 1049-1050 (Alas, 1975).

The California Supreme Court in *Li, supra,* abolished the last clear chance doctrine summarily after concluding that a system of pure comparative negligence should be adopted. The *Li* Court reasoned that the doctrine was "subsumed under the general process of assessing liability in proportion to negligence." 13 Cal 3d 829. The Alaska

Supreme Court in *Kaatz, supra,* while also abolishing the doctrine during the course of adopting a system of pure comparative negligence, gave the following explanation:

> We are, however, prepared to deal with one facet of the comparative negligence rule at this time: the status of the doctrine of "last clear chance". The rationale underlying this doctrine is that even though the plaintiff has been contributorily negligent he should still be able to recover his entire damages if the defendant had the last opportunity to avoid the accident. The application of the doctrine is particularly apt in cases where the plaintiff is in a helpless predicament, owing to his own negligence, and the defendant, although perceiving plaintiff's situation and realizing the plaintiff's peril, fails negligently thereafter to avoid injuring the plaintiff. Unfortunately the search for limits to the doctrine and for the proper sphere of its application has led to great confusion in the law of tort, much of which can probably never be dispelled. But it is recognized by nearly all who have reflected upon the subject that the last clear chance doctrine is, in the final analysis, merely a means of ameliorating the harshness of the contributory negligence rule. Without the contributory negligence rule there would be no need for the palliative doctrine of last clear chance. To give continued life to that principle would defeat the very purpose of the comparative negligence rule— the apportionment of damages according to the degree of mutual fault. There is, therefore, no longer any reason for resort to the doctrine of last clear chance in the courts of Alaska. [540 P2d 1050.]

We adopt the view that the last clear chance doctrine has been abolished with the adoption of a pure comparative negligence system in Michigan. Further, we reject the dictum in *Wilson* that it should be retained as a form of jury instruction.

This is not to say that notions of last clear chance are unavailable as a factor for the jury to consider in apportioning damages according to the degree of mutual fault. A party may properly argue to the jury that the other party had the greater percentage of negligence because he or she had the last clear chance to avoid injury. See for example *Dixon v Stewart*, 658 P2d 591, 598-599, n 7 (Utah, 1982), wherein the Utah Supreme Court noted:

> Our decision here does not preclude argument to the jury as to whether a party may or may not have had the "last clear chance" to avoid injury. However, the old "all or nothing" doctrine is now subsumed within comparative negligence and, as bearing on which party was guilty of the greater negligence, "last clear chance" becomes just one of many factors to be weighed in the comparison by the finder of fact.

However, the applicable law upon which the jury should be instructed is that of pure comparative negligence. Since the harsh "all or nothing" doctrine of contributory negligence has been abolished, there is no longer any reason to resort to the last clear chance doctrine when instructing the jury on whether the defendant is liable at all.

If the jury is instructed that a defendant is liable if it had the last clear chance to avoid the injury, it would then have to apportion damages based on comparative negligence. That is precisely what a jury would do in a comparative negligence situation even in the absence of a last clear chance instruction. The last clear chance instruction is, therefore, superfluous. It neither helps nor harms either party. Certainly it would be a contradiction to say to a jury that a defendant is liable only if it had the last clear chance and then to say that, in any event, plaintiff may recover damages based

upon comparative fault. If the purpose of the doctrine of last clear chance is to mitigate the harshness of contributory negligence, that goal has been accomplished by the adoption of pure comparative negligence in Michigan.

For these reasons, we conclude that the instruction given in the instant case on the last clear chance doctrine was error. The error, however, does not require reversal because it did not result in a jury verdict inconsistent with substantial justice. MCR 2.613(A); *Johnson, supra,* 327. The instruction given would not have allowed a full recovery despite plaintiff Russell Callesen's own negligence. The instruction only provided that the plaintiff may still recover if the components of the last clear chance doctrine were found. Both the instructions as a whole and the special verdict form required the jury to determine if plaintiff was negligent and the percentage of fault attributable to the plaintiff in accordance with Michigan's comparative negligence system. Since the jury did proceed in this manner and found plaintiff to be fifty-five percent negligent, we can find no injustice and, therefore, affirm the jury verdict. This result demonstrates just how superfluous the doctrine of last clear chance is. In effect, the doctrine of last clear chance was ignored and the case was decided on a comparative negligence basis.

The defendant railroad also claims that the trial court erred by instructing the jury on a theory of implied warranty of fitness of the roundel used in the flashing light signal for its intended safety purpose. While we agree that the trial court erred, the error does not require reversal.

The instruction was error because it was inapplicable to the context of this case. An implied warranty of fitness grounded in tort is a warranty implied in fact or law. *Clancey v Oak Park Village*

*Athletic Center,* 140 Mich App 304, 306; 364 NW2d 312 (1985). The warranty theory of liability is distinguishable from the negligence theory in that negligence generally focuses on a defendant's conduct, while warranty focuses on the product itself. *Prentis v Yale Mfg Co,* 421 Mich 670, 692-693; 365 NW2d 176 (1984); *Smith v E R Squibb & Sons,* 405 Mich 79, 89; 273 NW2d 476 (1979). Under the warranty theory, the plaintiff must establish a product defect attributable to the manufacturer, although someone else, i.e., a seller or bailor, may also be held accountable for breach of an implied warranty. See *Smith, supra,* 89; *Prentis, supra,* 693 (manufacturer or seller liable); *Jones v Keetch,* 388 Mich 164, 168; 200 NW2d 227 (1972) (bailor liable). A defect can be shown if the product is not reasonably fit for its intended, anticipated, or reasonably foreseeable use. *Fabbrini Family Foods, Inc v United Canning Corp,* 90 Mich App 80, 92; 280 NW2d 877 (1979).

The only use of the roundel that plaintiffs claimed was defective was to give a warning to motorists of an approaching train. Plaintiffs' implied warranty theory was predicated on the railroad's alleged selection and installation of the wrong roundel for the railroad crossing. Plaintiffs argue that the railroad "breached a warranty of fitness when it installed it [the roundel] at the Oak Road Crossing." The narrow question we must resolve is whether the use of the wrong product to give a warning by one owing a duty to warn can constitute a breach of an implied warranty. We decide this question in the negative.

While it is true that an inadequate warning alone can constitute a product defect, *Smith, supra,* 89-90, liability under these circumstances is based on the manufacturer's failure to give potential users a warning of the product's latent risk of

injury, as well as the failure of the manufacturer to manufacture and design a product to eliminate the unreasonable risk of foreseeable injuries. *Fabbrini, supra,* 92. A product is not defective merely because one owing a duty to warn selects and uses the wrong product. Under these circumstances, an injured person may proceed against the user of the product in negligence, but may not proceed under a theory of implied warranty.

The railroad here had a duty to warn motorists of an approaching train. Contrary to plaintiffs' argument, the railroad did not "supply" the roundel to the public, but rather used the roundel in an effort to comport with its duty to warn. The risk of harm faced by approaching motorists stemmed from the railroad's conduct in selecting and using the wrong roundel, and not from any defect in the product itself. Under these facts, we hold that plaintiffs did not have a cognizable claim for implied warranty and that the trial court should have refused to instruct the jury on this theory of liability. The error, however, did not result in a jury verdict inconsistent with substantial justice because the jury also found the defendant railroad liable on a negligence theory. Accordingly, the judgment is affirmed. MCR 2.613(A); *Johnson, supra,* 327.

Plaintiffs have raised one issue by way of cross-appeal against the defendant association. They claim that the trial court erred by granting a judgment notwithstanding the verdict in favor of the association on their negligence claim. When deciding a motion for judgment notwithstanding the verdict, the court must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party every reasonable inference that can be drawn from the evidence. A judgment notwithstanding the verdict is proper

only when there is insufficient evidence, as a matter of law, to make an issue for the jury. *Murphy v Muskegon Co,* 162 Mich App 609, 616; 413 NW2d 73 (1987).

Initially, we note that the jury was not asked to resolve any factual questions pertaining to the element of duty. The jury was asked to decide whether the defendant association was negligent and whether the association's negligence was a proximate cause of the injury or damage to the plaintiffs. The jury answered these questions in the affirmative, but the trial court vacated the jury verdict for the reason that the duty element was lacking. Plaintiffs claim that the association had a duty under 2 Restatement Torts, 2d, § 324A, which establishes tort liability for a voluntary undertaking to render services for others where the services are negligently performed. The Restatement test, as quoted in *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 712; 303 NW2d 702 (1981), states:

"§ 324A. Liability to Third Person for Negligent Performance of Undertaking

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [sic; perform] his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Smith,* our Supreme Court applied § 324A to

the question of a fire insurer's liability to employees of its insured for injuries sustained as a result of fire hazards not detected and brought to the insured's attention as a result of the insurer's inspections of the insured's premises. After stating the well-settled rule that it is for a court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty, the Court stated with regard to § 324A:

> It is also for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised. In the instant cases we are satisfied that the evidence, taken most favorably to plaintiffs, failed to create a jury question on whether the scope and nature of the relationships gave rise to an undertaking which would create a duty on the part of the insurers. Absent evidence supporting a conclusion that the insurers agreed or intended to provide inspection services for the employers' benefit, the threshold element of duty—which in a case based upon § 324A flows from an *undertaking to render services to another*—is lacking. [Emphasis in original. 410 Mich 715.]

The dispositive issue in this case pertains to the scope of the association's undertaking. Plaintiffs claim that the association "undertook to investigate flashing light units to determine their adequacy for present day traffic conditions," and that it, therefore, had a duty "to act reasonably in reporting the research results in making recommendations to its members."

The trial record indicates that the association did indeed undertake to investigate various roundels and lamps housed in flashing light units. The association published information on its test data, including charts comparing the strengths of hot spot roundels to ordinary flashing lenses. Never-

theless, the recommendations made by the association based on its test data were general ones. For instance, in one publication, the association stated:

> The flashing light signals currently being supplied, when properly focused, aligned and maintained, and with rated voltage on the lamp, will provide sufficient lamp brightness to insure display of an arrestive and effective aspect.

Plaintiffs argue that the association should have gone further by indicating that hot spot roundels showed superior alerting qualities and by recommending their use on high speed straight approach roads. However, viewed most favorably to plaintiff, there was insufficient evidence to support a conclusion that this type of specific product recommendation was within the scope of the association's undertaking. It should also be noted that there was no evidence to support a conclusion that the association published information on its test data in a misleading or inaccurate manner. Plaintiffs' theory of liability was predicated solely on the association's failure to make more specific recommendations.

On these facts, we conclude that plaintiffs' theory of liability was outside the scope of the association's undertaking. Since the association did not undertake a duty to make specific recommendations, it follows that the threshold element of duty under § 324A was not established. Further, we note that plaintiffs have failed to identify any characteristics of the parties that would justify broadening the association's legal duty beyond the scope of its voluntary undertaking. Since there was no duty, there was no factual question to present to the jury. Accordingly, the trial court correctly granted judgment notwithstanding the verdict in favor of the association.

Affirmed.