WILSON v GENERAL MOTORS CORPORATION

Docket Nos. 106198, 109438. Submitted October 18, 1989, at Detroit. Decided April 2, 1990. Leave to appeal applied for.

Gail L. Wilson was discharged from her employment with General Motors Corporation. Wilson brought an action for damages against General Motors in Wayne Circuit Court, alleging race and gender discrimination in violation of the provisions of the Civil Rights Act and wrongful discharge by breach of an implied contract of continued employment. The jury found that race or gender was a determining factor in defendant's decision to discharge plaintiff, that an implied contract existed between plaintiff and defendant to the effect that defendant would only be discharged for good cause, and that plaintiff was not discharged for good cause. The jury awarded plaintiff $500,000 for lost wages and benefits and $750,000 for pain and suffering. Defendant moved for judgment notwithstanding the verdict, a new trial or remittitur. The trial court, Richard P. Hathaway, J., denied judgment notwithstanding the verdict, denied the motion for a new trial if plaintiff agreed to remittitur and reduced the award for pain and suffering to $375,000. Defendant appealed. Plaintiff cross appealed. Plaintiff moved for costs and attorney fees pursuant to the Civil Rights Act. The trial court entered an award for costs and attorney fees of $86,730.24. Defendant appealed from the award of costs and attorney fees.

The Court of Appeals *held:*

1. The record fails to support defendant's claim of prejudice arising out of the alleged misconduct of plaintiff's counsel during the trial.

2. The trial court did not err in refusing to permit the

REFERENCES

Am Jur 2d, Appeal and Error §§ 352, 355; Job Discrimination §§ 1985, 2502, 2503, 2511, 2515, 2520; New Trial § 576; Trial § 219.

Recovery of damages as remedy for wrongful discrimination under state or local civil rights provisions. 85 ALR3d 351.

testimony of a defense witness who had not been put on the witness list as required under a local court rule then in effect.

3. No error requiring reversal arose out of the trial court's instructions to the jury.

4. The trial court properly allowed plaintiff and another employee of defendant to testify as to their perception of the racial overtones of statements made by a supervisor employed by defendant to plaintiff and other similarly situated employees.

5. Since there was sufficient evidence to support the jury's determinations that there was both a civil rights violation and an implied contract of continued employment, the trial court properly denied the motion for judgment notwithstanding the verdict.

6. The trial court did not abuse its discretion by entering the award of remittitur on the pain and suffering award.

7. The jury's award of economic damages clearly reflects inclusion of the sought, but unproved, damages for loss of life insurance and loss of cost of living. Accordingly, the $500,000 award for economic damages should be reduced to $373,578.11.

8. Since the question of entry of costs and attorney fees was not reserved in the order of judgment and the motion for such costs was made subsequent to the claim of appeal, the trial court lacked jurisdiction to amend its prior judgment by an award of costs and attorney fees. The award of costs and attorney fees is set aside without prejudice to plaintiff's right to renew that motion in the trial court.

Affirmed in part and reversed in part.

MURPHY, J., concurred in part with the majority, but would not have granted remittitur as to economic damages and would not have held that the use of a multiplier in the calculating of attorney fees is improper under the Civil Rights Act.

1. APPEAL — ATTORNEY MISCONDUCT — FAIR TRIAL.

An attorney's comments at trial will usually not be cause for reversal on appeal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial or where counsel's comments were such as to deflect the jury's attention from the issues involved and had a controlling influence upon the verdict.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

The standard jury instructions relative to employment discrimination are sufficient in themselves to inform the jury as to its

duty; it is not error for a trial court to refuse to give supplemental instructions concerning employment discrimination (SJI2d 105.02-105.04).

3. EVIDENCE — OPINION TESTIMONY — EMPLOYMENT DISCRIMINATION — RACE DISCRIMINATION.

Minority employees testifying in an employment discrimination suit based on alleged race discrimination may give opinion testimony as to whether a supervisor's comments to them during the course of their employment had a racial overtone since such testimony is rationally based upon the perception of the witness and would be helpful to a clear understanding of the fact at issue (MRE 701).

4. NEW TRIAL — REMITTITUR — ACCEPTANCE OF REMITTITUR — MAIL.

Acceptance by a plaintiff of remittitur rather than a new trial, when the acceptance is done by mail, is complete at the time of mailing rather than on the date that it is received or processed by the court clerk (MCR 2.107[C][3]).

5. APPEAL — ORDERS — ATTORNEY FEES.

A trial court is without jurisdiction to award attorney fees after a claim of appeal has been filed unless the trial court's order granting judgment provided that the trial court would award such fees (MCR 7.208A).

6. CIVIL RIGHTS — ATTORNEY FEES — CONTINGENCY FEE AGREEMENTS.

The existence of a contingent fee arrangement does not preclude an award of attorney fees to a successful plaintiff under the Civil Rights Act; however, the existence of a contingent fee arrangement is one of the factors which a trial court should consider in determining what constitutes a reasonable fee award (MCL 37.2802; MSA 3.548[802]).

7. CIVIL RIGHTS — ATTORNEY FEES — EVIDENTIARY HEARINGS.

A trial court, when confronted with a challenge to the reasonableness of the attorney fees requested pursuant to the provisions of the Civil Rights Act, should conduct an evidentiary hearing at which an inquiry is made as to the actual services which were rendered and the reasonableness of the requested fees.

8. CIVIL RIGHTS — ATTORNEY FEES.

It is improper for a trial court in awarding attorney fees pursuant to the Civil Rights Act to determine the award of attorney fees by multiplying the total of the actual hourly and daily rates incurred by a plaintiff's counsel by a multiplier greater

than unity without explaining why the case is so exceptional as to warrant application of a multiplier factor.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita* and *Courtney Morgan, Jr.*), for plaintiff.

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan, Robert G. Brower* and *Martha B. Goodloe*), for defendant.

Before: McDONALD, P.J., and MICHAEL J. KELLY and MURPHY, JJ.

MICHAEL J. KELLY, J. Defendant, General Motors Corporation, appeals from a jury verdict and award of attorney fees in favor of plaintiff, Gail Leslie Wilson. Plaintiff appeals from the circuit court's grant of remittitur in favor of defendant.

Plaintiff, a black woman, was employed by GM's Assembly Division as a data preparation operator from December of 1976 to October of 1981, when she was discharged. At the time of her discharge, plaintiff was on a performance improvement plan to increase her rate of production. This plan put her on six months employment probation. Plaintiff became pregnant in April or May of 1981, and this evidently caused her work quality to decline during this performance improvement period.

Following her discharge, plaintiff filed suit against defendant for race and gender discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and for wrongful discharge under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), reh den 409 Mich 1101 (1980). Plaintiff claimed that defendant discriminated against her on the basis of her race and gender by transferring and promoting other workers, who

were white women, while refusing to transfer or promote plaintiff. Plaintiff claimed that she was fired because she confronted her supervisor regarding GM's failure to transfer or promote black female employees and because of her pregnancy. Plaintiff's *Toussaint* claim was based upon the verbal promise of one of defendant's personnel employees at the time plaintiff was hired. Defendant denied discriminating against the plaintiff or otherwise wrongfully discharging her. It claimed that plaintiff was discharged due to her poor job performance.

Following trial, the jury found that race or gender was a determining factor in defendant's decision to discharge plaintiff. It found that a contract existed between plaintiff and defendant that defendant would fire plaintiff only for good cause and that plaintiff was not discharged for good cause. The jury awarded plaintiff $500,000 for lost wages and benefits, plus $750,000 for pain and suffering. Defendant moved for judgment notwithstanding the verdict, a new trial, and remittitur. The circuit court denied defendant's motions for judgment notwithstanding the verdict or a new trial, but granted remittitur of the pain and suffering award to $375,000 for a total award of $875,000. Plaintiff moved for costs and attorney fees, which the court granted, in the amount of $86,730.24.

I

Defendant argues that the jury's verdict must be reversed because improper conduct by plaintiff's counsel denied defendant a fair and impartial trial. GM claims that plaintiff's counsel made improper inflammatory statements regarding unrelated incidents, made repeated references to mat-

ters outside the record, and made improper comments regarding defense witnesses. We find no error requiring reversal.

When reviewing asserted improper conduct by a party's lawyer, we must first determine whether the lawyer's action was error and, if so, whether the error requires reversal. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982). A lawyer's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial. *Guider v Smith,* 157 Mich App 92, 101; 403 NW2d 505 (1987), aff'd 431 Mich 559 (1988). Reversal may also be required where counsel's remarks were such as to deflect the jury's attention from the issues involved and had a controlling influence upon the verdict. *Id.*

Defendant complains about the following comments made by plaintiff's counsel during his opening statement:

> It [discrimination] can be a bunch of guys in white sheets standing on your front lawn burning a cross, or it could be . . . .
>
> \*  \*  \*
>
> Discrimination can be brutally beating a black boy out in front of a pizza parlor in New York. It can be telling of racial jokes over a radio station, or [sic] one of the finest institutions in the country.
> . . . It was just an analogy. Obviously it can, also, be telling someone who complains to you about why they are not being given an opportunity to advance that they are lucky to have a job, and there are plenty more where you came from. It can, also, be consistently transferring white women out of a department and leaving the black women behind. That's in a racial situation. It can, also, be being insensitive to a woman's needs as caused by her pregnancy, and this can be sexual discrimination.

Defense counsel objected to these comments, but the circuit judge permitted them. The court did instruct the jury that the opening statements were not evidence and that anything that the attorney said was not evidence.

What constitutes a fair and proper opening statement is left to the discretion of the trial court. *Guider, supra,* p 102. Here, plaintiff's lawyer was evidently pointing out that there are obvious, overt forms of discrimination and subtle, less easily discerned forms of discrimination, such as in plaintiff's case. The examples cited in plaintiff's counsel's opening statement were not related to GM and were not attacks on GM. The circuit court did not abuse its discretion by permitting these remarks.

Defendant complains that plaintiff's counsel commented in closing on defendant's failure to present the testimony of a Doctor Golusin and on defendant's failure to present data entry operator logs which would verify defendant's claims that plaintiff was a poor worker. In *Reetz, supra,* 416 Mich 109, our Supreme Court pointed out:

> [I]t is legitimate to point out that an opposing party failed to produce evidence that it might have, and consequently the jury may draw an inference against the opposing party. This is permissible even though the same witnesses could have been produced by both parties.

These comments did not result in error.

Defendant also argues that plaintiff's counsel improperly belittled defense witness Nina Shepard and James Rupkey. In closing arguments, counsel may discuss the character of a witness and characterize their testimony. *DeVoe v C A Hull Inc,* 169 Mich App 569, 581; 426 NW2d 709 (1988), lv den

431 Mich 862 (1988). Plaintiff's attorney's comments did not deny defendant a fair trial and did not result in error.

II

Defendant argues that the circuit court erred by excluding the testimony of a crucial defense witness. We find no error.

Defendant attempted to present the testimony of Valerie Martin, a GM personnel representative, to rebut plaintiff's evidence indicating that defendant made plaintiff, while pregnant, return to work against the advice of physicians. Defendant argued that Martin would testify that she received a report from an independent physician, Dr. Golusin, which indicated that plaintiff was free to return to work. Martin had been previously deposed by the parties but was not listed on defendant's witness list in accordance with Wayne Circuit Court Rule 2.301. The court precluded Martin from testifying pursuant to LCR 2.301(4) on the ground that she was not listed as a witness.

Wayne Circuit Court Rule 2.301(4), which was in effect at the time of the trial, provided in relevant part:

> An unlisted witness may not be called at the trial, *except as the court orders for good cause shown* or as permitted by paragraphs (5) and (6). [Emphasis added.]

Under this local court rule, defendant could not present Martin as a witness unless it convinced the court of good cause. The record indicates that defendant did not show good cause for presenting Martin's testimony regarding Dr. Golusin's report. Martin's deposition testimony indicated that she

was not aware of the conclusions of Golusin's report or the results of his examination of plaintiff and that Martin herself had not signed the report. Additionally, Martin's testimony regarding the contents of Golusin's report appears to be inadmissible hearsay under MRE 801. See *Slayton v Michigan Host, Inc,* 144 Mich App 535, 551; 376 NW2d 664 (1985); *Carlisle v General Motors Corp,* 126 Mich App 127, 129; 337 NW2d 4 (1983). The circuit court properly excluded Martin's testimony.

III

Defendant claims that reversal is required because the circuit court refused to instruct the jury regarding the authority of defendant's employees to bind defendant to statements or promises made to plaintiff. We disagree.

Plaintiff testified at trial that, at the time she was hired by GM, an employee of GM in its personnel department, Leona Zyber, told plaintiff that she would remain employed so long as she did her work and followed the rules. One of plaintiff's witnesses also testified about similar statements made to her by employees in GM's personnel department. These statements served as the basis for plaintiff's *Toussaint* claim for breach of employment contract. Defendant did not call Zyber as a witness or present evidence regarding whether Zyber or other GM employees had actual or apparent authority to bind it with a verbal *Toussaint*-type contract.

Defendant requested the following jury instructions regarding the authority of employees to bind the employer:

Plaintiff claims that one or more employees of General Motors Corporation made statements or

promises to her that she would only be terminated for good cause. If you find that statements or promises were actually made by the defendants, you must then determine whether the person who made the statement or promise had the authority to bind General Motors to that statement or promise.

Authority of an employee to make statements or promises which bind General Motors can be of two types:

1. Actual Authority. This type of authority exists when the employee has been expressly authorized by General Motors to make such statements or promises.

2. Apparent Authority. This type of authority exists only if the plaintiff reasonably believed that the person who made promises or statements to her was authorized by General Motors to make those statements or promises.

If you find that one or more persons actually made statements or promises to the plaintiff, those statements or promises are not binding on General Motors unless you also find that the person who made the statement or promise had the actual or apparent authority to make the statement or promise.

The court declined to give this instruction and instead gave the following instruction:

Members of the jury, I instruct you that a corporation such as the Defendant, General Motors, in this case is operated through its employees.

If you find that there was wrongdoing on the part of any employee which caused injury to Gail Wilson, then such wrongdoing would be chargeable to General Motors.

Defendant argues that the court, through this instruction, improperly took from the jury the factual issue of whether its personnel employees

had actual or implied authority to make contracts with plaintiff. We agree that the instruction as given was incomplete and should have applied only to plaintiff's discrimination claims. However, any error due to this instruction is harmless and does not require reversal.

An instructional error does not require reversal where it did not result in a jury verdict inconsistent with substantial justice. MCR 2.613(A); *Johnson v Corbet,* 423 Mich 304, 327; 377 NW2d 713 (1985); *Callesen v Grand Trunk W R Co,* 175 Mich App 252, 263; 437 NW2d 372 (1989). The jury found in favor of plaintiff on both her claims. The jury's verdict of liability for race and gender discrimination alone supports the damages awarded under both claims. Additionally, we note that defendant offered no evidence to rebut plaintiff's testimony or to establish that Leona Zyber had no authority to enter into a *Toussaint*-type contract with plaintiff. Our Supreme Court in *Renda v International Union, UAW,* 366 Mich 58, 94; 114 NW2d 343 (1962), stated:

> Where the facts are either admitted or undisputed as to the existence of the principal agent's relationship and as to the scope of the agent's authority, the lower court may properly instruct the jury that the principal, as a matter of law, is responsible for the acts of the agent.

GM did not present evidence disputing Zyber's apparent authority. The circuit court's instruction does not require reversal.

IV

Defendant argues that reversal is required because the circuit court refused to instruct the jury that plaintiff bore the burden of proving that she

reasonably relied upon Leona Zyber's statements. We find no error.

At trial, defendant argued that, because the only basis for plaintiff's *Toussaint* claim was the statements of Leona Zyber, the trial court must instruct the jury that, in order to find a valid *Toussaint* claim, the jury would have to find either that plaintiff was not provided with GM's employee handbook or that the statements contained in the handbook were not inconsistent with Zyber's statements to plaintiff. Defendant requested the following jury instruction, which the court refused to give:

> Statements or promises made by employees to the plaintiff can only become a part of the plaintiff's employment contract if plaintiff's reliance on those statements was justifiable.
>
> If you find that the plaintiff was provided a written handbook which is inconsistent with statements made to plaintiff by other employees, I instruct you that plaintiff's reliance on those oral statements cannot be reasonable and your verdict must be for the defendants.

The circuit court did not err by refusing to give defendant's proposed instruction as it clearly overreaches. The second paragraph of this instruction eliminates the possibility that an employer's verbal statements of job security could supersede a written handbook. This is contrary to established precedent. An employer's oral promises can give rise to a contract that an employee shall not be discharged except for cause. *Toussaint, supra,* p 598. Under certain circumstances, verbal promises may negate the effect of written disclaimers which are intended to absolve employers from liability for policies presented in the employer's literature. *Kari v General Motors Corp,* 402 Mich 926; 261

NW2d 925 (1978); *Schipani v Ford Motor Co,* 102 Mich App 606, 614; 302 NW2d 307 (1981). GM's proposed instruction did not state the law. The circuit court properly refused to give it.

v

Defendant claims that the circuit court erred by refusing to instruct the jury that plaintiff had the burden of establishing a prima facie case of race or gender discrimination and that defendant's reasons for discharging plaintiff were pretextual. We find no error.

At trial, defendant requested the following jury instruction, based on *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973):

In order to prove that she was discriminated against because of her sex or race, plaintiff must prove:

(1) that she is a member of the protected group,

(2) that she was satisfactorily performing her job in accordance with GM's standards so as to entitle her to retain her job,

(3) that she and a similarly situated white person or man received dissimilar treatment.

This is called a prima facie case of discrimination, GM must articulate a legitimate, nondiscriminatory reason for its action. GM need not prove the absence of discrimination; it is only required to state a legitimate reason for discharging plaintiff. If it does so, the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was pretextual and not the true reason for the termination, either by showing that a discriminatory reason was the more likely motivation, or by showing that the articulated reason is unworthy of belief.

It is the plaintiff's burden to persuade you, by a

preponderance of the evidence, that the reason
given by GM for discharging her is pretextual. If
you find plaintiff has not met this burden, your
verdict must be for the defendant.

The court refused to give this instruction and
instead gave the applicable standard jury instruc-
tions, SJI2d 105.02-105.04.

The *McDonnell Douglas* instructions proposed by
defendant have been cited with approval by other
panels of this Court and may be appropriate in
certain cases. See *Bogue v Teledyne Continental
Motors,* 136 Mich App 374; 356 NW2d 25 (1984).
However, the committee which formulated the
applicable standard jury instructions for employ-
ment discrimination declined to adopt the *McDon-
nell Douglas* model for its instructions on the
ground that it adds little to the jurors' understand-
ing of the case and may lead to juror confusion.
Michigan Standard Jury Instructions, 2d ed, p 17-
5.

Although the *McDonnell Douglas* instructions
may be appropriate in the proper case, there is no
indication that they should have been given in lieu
of or in addition to SJI2d 105.02-105.04. The stan-
dard jury instructions given correctly stated the
law and did not mislead the jury. There was no
need to give defendant's requested instruction.

VI

Defendant claims that the circuit court erred by
permitting plaintiff and one of her witnesses to
testify regarding their perception of racial preju-
dice in statements made by one of plaintiff's super-
visors. We find no error.

At trial, plaintiff and her coworker, Theresa
Swint, testified regarding statements made by

plaintiff's supervisor, Mr. Rupkey. Swint testified that Rupkey told them that they should be satisfied with what they had and be grateful that they had a job. Plaintiff testified that Rupkey told them that they had a lack of skills and that they weren't going anywhere no matter what type of degree they attained. Plaintiff's counsel questioned both witnesses as to whether they felt there was a racial overtone to Rupkey's comments. The court permitted these questions over defendant's objections. Both plaintiff and Swint testified that they felt there was a racial overtone to Rupkey's comments. Swint testified that she understood Rupkey's comments to be directed at the black women operators in their department.

Defendant argues that permitting this testimony was erroneous and requires reversal. We disagree. MRE 701 permits a nonexpert witness to testify in the form of opinions or inferences where those opinions or inferences are

> (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

It is not erroneous for a lay witness to express an opinion regarding discrimination in an employment setting so long as the opinion complies with the requirements of MRE 701. *Heath v Alma Plastics Co,* 121 Mich App 137, 142-143; 328 NW2d 598 (1982). The federal Sixth Circuit Court of Appeals reached the identical conclusion when construing FRE 701 in *Torres v Oakland Co,* 758 F2d 147, 149-150 (CA 6, 1985). Reviewing plaintiff's and Swint's testimony, we note that their opinions were rationally based upon their perception of Rupkey's comments and behavior in the employment setting. This testimony may have been per-

mitted or rejected by the trial judge. It was his discretion whether it was clearly helpful to the jury's determination of whether race or gender discrimination was behind defendant's decision to discharge plaintiff. This testimony was properly admitted under MRE 701.

VII

Defendant argues that the circuit court erred by denying its motion for judgment notwithstanding the verdict or a new trial, claiming that plaintiff failed to produce sufficient evidence in support of either her *Toussaint* or employment discrimination claims. We find no error.

Judgment notwithstanding the verdict should be granted only where there is insufficient evidence presented to create an issue for the jury. *Murphy v Muskegon Co,* 162 Mich App 609, 616; 413 NW2d 73 (1987). Judgment notwithstanding the verdict is improper if the evidence is such that reasonable persons could differ on issues of fact. *Id.* The standard for granting a new trial is whether the jury's verdict was contrary to the overwhelming weight of the evidence. *Id.,* p 616. The grant or denial of a motion for a new trial is within the trial court's discretion and will not be disturbed on appeal absent a clear abuse of discretion. *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 (1985).

The circuit court properly denied defendant's motion for judgment notwithstanding the verdict or a new trial. Although it is the narrowest of questions as to plaintiff's *Toussaint* claim, plaintiff did present testimony that an employee of GM told her that she would remain employed so long as she did her job and followed the rules. GM did not

offer as evidence at trial the denial of that employee or any other contradiction. As previously noted, such verbal statements can give rise to a contract that an employee will be discharged only for just cause. *Toussaint, supra,* p 598. While the *Toussaint* rule seems to be a rule which invites abuse, we did not make it, we only apply it. No doubt the Supreme Court will be invited to revisit consideration of the *Toussaint* rule in the later course of these proceedings and well may wish to do so. Furthermore, plaintiff presented testimony that defendant agreed to aid plaintiff in improving her job performance, then failed to follow through with that plan. A jury could reasonably find that a *Toussaint*-type contract existed and that defendant GM discharged plaintiff without sufficient cause, in violation of that contract.

With regard to plaintiff's claims for employment discrimination, plaintiff presented evidence of racial overtones in remarks made by plaintiff's supervisors and also presented evidence indicating that black women were transferred or promoted less frequently. Plaintiff presented evidence that defendant ignored plaintiff's medical problems resulting from her pregnancy, which was the basis for her gender discrimination claim. Overall, plaintiff produced sufficient evidence from which a jury could reasonably have found that race or gender discrimination was a basis for plaintiff's discharge. Although defendant presented testimony that plaintiff was not a good worker and was fired for poor job performance, this evidence was not overwhelming. Plaintiff presented sufficient evidence to create jury issues as to all her claims. The jury's verdict was not contrary to overwhelming evidence. The circuit court did not err by denying defendant a new trial or judgment notwithstanding the verdict.

VIII

Both parties contest the trial court's grant of remittitur. Plaintiff argues that the court erred in ordering remittitur for plaintiff's pain and suffering damages. Defendant argues that defendant is entitled to a new trial because plaintiff's acceptance of remittitur was ineffective because it was not made in a timely fashion and that the circuit court erred by denying defendant remittitur as to plaintiff's economic damages.

We reject defendant's argument that plaintiff's acceptance of remittitur was untimely. The circuit court's order of January 4, 1988, conditionally denied defendant a new trial upon plaintiff's consenting to remittitur within fourteen days. Plaintiff's acceptance of remittitur is stamped January 20, 1985. However, the proof of service by mailing is dated January 15, 1988. Service by mail is complete at the time of mailing, not when stamped by the circuit court clerk. MCR 2.107(C)(3). Plaintiff's acceptance was timely.

An appellate court must accord due deference to the trial court's decision regarding the grant of additur or remittitur and should reverse the trial court's decision only if an abuse of discretion is shown. *Palenkas v Beaumont Hosp,* 432 Mich 527, 531; 443 NW2d 354 (1989). The proper consideration in granting additur or remittitur is not whether the verdict "shocks the conscience" but whether the jury award is supported by the evidence. *Id.,* p 532; MCR 2.611(E)(1). The trial court's inquiry is limited to objective considerations regarding the evidence adduced and the conduct of the trial. *Palenkas, supra,* p 532.

With regard to the jury's award of economic damages, we find that the jury's award of $500,000 is excessive and is unsupported by the evidence. In

closing, plaintiff's counsel listed plaintiff's economic damages on a blackboard as follows:

| | |
|---|---|
| Lost Wages: | $195,911.23 |
| Life Insurance: | 31,437.60 |
| Retirement Benefits: | 111,615.00 |
| Health Insurance: | 53,276.00 |
| Cost of Living: | 94,984.29 |
| Stock Benefits: | 13,956.00 |
| TOTAL | $501,180.12 |

Plaintiff testified as to her wages at the time of her discharge and to the cost of replacement health care insurance. Plaintiff's counsel argued that the remaining figures for life insurance, retirement benefits, cost of living, and stock benefits could be calculated by reference to defendant's brochure, *Your GM Benefits,* which was entered into evidence. Plaintiff's counsel did not explain to the jury how these numbers were calculated from the brochure.

Review of these economic damages figures and defendant's brochure indicates that certain of these items were unsupported by the evidence. The value of plaintiff's retirement benefits and stock benefits could be calculated by reference to the brochure and to plaintiff's former wages. The amounts given by plaintiff's counsel for those benefits, though high, were not so excessive as to be unsupportable. Although the jury could calculate the amount of plaintiff's life insurance policy from the same sources, it was not proper for plaintiff to receive the face value of her policy, which would in effect make her the beneficiary of her own life insurance policy. The appropriate figure would be the cost of an equivalent policy. The figure for cost of living cannot be supported by the brochure or other evidence. The circuit court abused its discretion in finding that all of plaintiff's alleged eco-

nomic damages were supported by the evidence. Plaintiff's alleged damages of $31,437.60 for life insurance and $94,984.29 for cost of living were clearly unsupported. Defendant is entitled to remittitur for these items. Accordingly, we deduct $126,421.89 from the $500,000 award for economic damages and remit this verdict to $373,578.11.

We disagree with plaintiff's claim that the circuit court's remittitur of plaintiff's noneconomic damages was improper. The jury's original award of $750,000 was solely for mental anguish, not for any physical pain or suffering. Plaintiff did not present any expert testimony regarding her mental distress but only testimony as to her own subjective feelings. The circuit court found that the jury's original award for mental anguish was improper because it was due to the jury's desire to punish defendant. Punitive damages are not permitted. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980). The trial court, due to its ability to evaluate the jury's reaction to the conduct of the trial, is in the best position to make an informed decision regarding the excessiveness of the verdict and whether it was due to the jury's desire to punish a defendant. *Palenkas, supra,* pp 530-531. Accordingly, we grant the circuit court due deference in this determination. *Id.* The circuit court did not abuse its discretion in remitting the verdict for plaintiff's noneconomic damages to $375,000.

## IX

Defendant argues that the circuit court's award of attorney fees under § 802 of the Civil Rights Act, MCL 37.2802; MSA 3.548(802), was improper for several reasons. We agree and reverse the award of attorney fees.

Defendant first argues that the circuit court lost jurisdiction to award attorney fees under § 802 because defendant filed its claim of appeal prior to the circuit court's hearing on plaintiff's motion for fees. We agree.

Defendant filed its claim of appeal in January, 1988. The circuit court's hearing on plaintiff's fee motion was held in March, 1988. MCR 7.208(A) provides:

> Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except by order of the Court of Appeals, by stipulation of the parties or as otherwise provided by law.

Filing of a claim of appeal divests the circuit court of its jurisdiction to amend its final orders. *Vallance v Brewbaker,* 161 Mich App 642, 647-648; 411 NW2d 808 (1987), lv den 430 Mich 883 (1988). A trial court's order awarding attorney fees is considered an amendment of the court's order granting judgment, unless the original order provided that the court would award fees. *Vallance, supra; Lincoln v Gupta,* 142 Mich App 615; 370 NW2d 312 (1985), lv den 424 Mich 874 (1986). The circuit court did not indicate that it would award fees in its original order, so it was without jurisdiction to provide for fees following defendant's claim of appeal. *Vallance, supra,* p 648. We therefore reverse the fee award without prejudice to plaintiff's right to renew her motion for attorney fees.

Defendant claims that the fee award was improper because plaintiff's attorneys were being paid via a contingency fee arrangement. Defendant also claims that the court erred by not considering the existence of the contingency fee ar-

rangement in calculating the fee award, arguing that the award of fees was unnecessary. We agree with defendant that the circuit judge should have considered the contingency fee arrangement when determining a reasonable fee but disagree that this would automatically preclude a fee award under § 802.

Whether to award attorney fees under § 802 of the Civil Rights Act to a successful plaintiff is left to the trial court's discretion. *Eide v Kelsey-Hayes Co,* 154 Mich App 142, 162; 397 NW2d 532 (1986), aff'd 431 Mich 26 (1988). Where attorney fees are to be awarded, the court must determine the reasonable amount of fees according to the factors in *Wood v DAIIE,* 413 Mich 573, 588; 321 NW2d 653 (1982). *Eide, supra.* The presence of contingency fee arrangements providing for the plaintiff's attorney fees does not preclude an award of fees under § 802 but is merely one of the factors to be considered in determining a reasonable fee award. *King v General Motors Corp,* 136 Mich App 301, 308; 356 NW2d 626 (1984), lv den 422 Mich 871 (1985). If plaintiff renews her motion for fees upon remand, the circuit court should consider the existence of the contingency fee contract when determining the reasonableness of any fee award.

Defendant also argues that the circuit court erred by denying defendant an evidentiary hearing regarding the amount of fees to be awarded and by using a multiplier of 1.5 to calculate the fee award. We agree.

Where the opposing party challenges the reasonableness of the fee requested, the trial court should inquire into the services actually rendered prior to approving the bill of costs. *Petterman v Haverhill Farms, Inc,* 125 Mich App 30, 33; 335 NW2d 710 (1983). Although a full-blown trial is not necessary, an evidentiary hearing regarding

the reasonableness of the fee request is. *Id.* See *Blum v Witco Chemical Co,* 829 F2d 367, 377 (CA 3, 1987). The circuit court erred by refusing to hold such a hearing.

When determining the fee award, the circuit court first determined reasonable hourly and daily rates for each plaintiff's counsel, then indicated that a multiplier of 1.5 should be used to determine plaintiff's attorneys' reasonable fees. The court did not explain why it was using a fee multiplier.

The United States Supreme Court has rejected the use of a fee multiplier to determine the appropriate amount for an award of attorney fees in a suit brought under the Clean Air Act. *Pennsylvania v Delaware Valley Citizens' Council for Clean Air,* 483 US 711; 107 S Ct 3078; 97 L Ed 2d 585 (1987). The Court held that a multiplier is not permitted to enhance a reasonable fee award to compensate for the risk of loss and nonpayment in a contingency fee case except in extraordinary circumstances. 483 US 728-730. We adopt that reasoning here. Section 802 of the Civil Rights Act provides only for the award of a reasonable attorney fee, not a fee enhanced by a premium for assuming the risks inherent in a contingency fee case. It was improper for the circuit court to utilize a fee multiplier without explanation as to why this case was so exceptional as to warrant its use.

Affirmed in part and reversed in part. The jury's verdict for economic damages is remitted to the amount of $373,578.11, for a total damage award of $748,578.11. The circuit court's award of attorney fees is reversed without prejudice to plaintiff's right to renew her motion for attorney fees. Remanded. No costs, neither party having prevailed.

McDONALD P.J., concurred.

MURPHY, J. *(concurring in part and dissenting in part).* I concur with the majority opinion with two exceptions.

First, a jury's ability to render a verdict is not limited or controlled by the arguments of counsel as to an appropriate award or the manner in which a jury is to calculate an award. Rather, a jury award is to be determined based upon the evidence presented and the instructions from the court. Regarding the remittitur issues, in *Palenkas v Beaumont Hosp,* 432 Mich 527, 533-534; 443 NW2d 354 (1989), the Supreme Court held that an appellate court must accord due deference to the trial court's decision and may only disturb a grant or denial of remittitur if an abuse of discretion is shown. I am not persuaded that an abuse of discretion has been shown with respect to the trial court's decision on remittitur of either the economic or noneconomic damage portions of the verdict. On the noneconomic remittitur decision, I concur with the majority. On the economic remittitur decision, I cannot conclude that the trial court abused its discretion in denying remittitur. The jury's award for economic damages was consistent with the exhibits presented at trial; the evidence of replacement costs of health care insurance, future wage losses of the plaintiff, and the effects of inflation thereon; and the instructions given by the court.

Second, I am not prepared to conclude that a trial court may utilize a multiplier in a contingency fee case only in extraordinary circumstances. In my opinion, *Pennsylvania v Delaware Valley Citizens' Council for Clean Air,* 483 US 711; 107 S Ct 3078; 97 L Ed 2d 585 (1987), is not controlling in the present case, because it was a

plurality opinion and because it construed a specific federal statute not involved in this case.

Furthermore, although five justices argued that use of a risk multiplier was improper under the circumstances of that case, five justices also held that Congress did not intend to foreclose trial courts from considering the contingency of nonpayment in setting reasonable attorney fees under statutory fee-shifting provisions.

Rather, I would hold that on remand the trial court must set forth its reasons for utilizing a multiplier in awarding attorney fees. This Court could then consider such findings, together with other appropriate factors, in determining whether the award of attorney fees by the trial court is reasonable.